## ALABAMA *v*. KING & BOOZER, A PARTNERSHIP, ET AL.

No. 602. Argued October 23, 24, 1941.—Decided November 10, 1941.

**2**

*Messrs. Thomas S. Lawson,* Attorney General of Alabama, and *John W. Lapsley,* Assistant Attorney General, with whom *Mr. J. Edward Thornton,* Assistant Attorney General, was on the brief, for petitioner.

*Assistant Solicitor General Fahy,* with whom *Assistant Attorney General Clark* and *Messrs. J. Louis Monarch, Berryman Green, Paul F. Mickey, O. W. Hammonds, Jr., Warner W. Gardner,* and *Fred L. Blackmon* were on the brief, for respondents.

3

4

6

*Messrs. Eugene Stanley,* Attorney General of Louisiana, and *Cicero C. Sessions* filed a brief on behalf of the State of Louisiana, as *amicus curiae,* urging reversal.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

Respondents King and Boozer sold lumber on the order of "cost-plus-a-fixed-fee" contractors for use by the latter in constructing an army camp for the United States. The question for decision is whether the Alabama sales tax with which the seller is chargeable, but which he is required

to collect from the buyer, infringes any constitutional immunity of the United States from state taxation.

The Alabama statute, Act No. 18, General Acts of Alabama, 1939, expressly made applicable to sales of building materials to contractors, § I (j), lays a tax of 2 per cent on the gross retail sales price of tangible personal property. While in terms, § II, the tax is laid on the seller, who is denominated the "taxpayer," by § XXVI it is made the duty of the seller "to add to the sales price and collect from the purchaser the amount due by the taxpayer on account of said tax."

Section VII provides that when sales are made on credit the tax is payable as and when the collection of the purchase price is made. The Supreme Court of Alabama has construed these provisions as imposing a legal obligation on the purchaser to pay the tax, which the seller is required to add to his sales price and to collect from the purchaser upon collection of the price, whether the sale is for cash or on credit. See *Lone Star Cement Corp.* v. *State Tax Commission,* 234 Ala. 465, 175 So. 399; *Long* v. *Roberts & Son,* 234 Ala. 570, 176 So. 213; *National Linen Service Corp.* v. *State Tax Commission,* 237 Ala. 360, 186 So. 478; *Wood Preserving Corp.* v. *State Tax Commission,* 235 Ala. 438, 179 So. 254. Section V excludes from the tax the proceeds of sales which the state is prohibited from taxing by the Constitution or laws of the United States.

Respondents King and Boozer, who furnished the lumber in question on the order of the contractors, appealed to the state circuit court from an assessment of the tax by the state department of revenue, on the ground that the tax is prohibited by the Constitution because laid upon the United States, and is excluded from the operation of the taxing statute by its terms. The United States was permitted to intervene and joined in these contentions.

The trial, upon a stipulation of facts embodying the relevant documents, resulted in a decree sustaining the tax,

which the Supreme Court of Alabama reversed, 3 So. 2d 572. Apart from the constitutional restriction, it found no want of authority in the taxing statute for the collection of the tax from the contractors. But it concluded that although the contractors were indebted to the seller for the purchase price of the lumber, they were so related by their contract to the Government's undertaking to build a camp, and were so far acting for the Government in the accomplishment of the governmental purpose, that the tax was in effect "laid on a transaction by which the United States secures the things desired for governmental purposes," so as to infringe the constitutional immunity, citing *Panhandle Oil Co.* v. *Knox,* 277 U. S. 218; *Graves* v. *Texas Co.,* 298 U. S. 393. We granted certiorari, 314 U. S. 599, the question being one of public importance.

Congress has declined to pass legislation immunizing from state taxation contractors under "cost-plus" contracts for the construction of governmental projects.[1] Consequently, the participants in the present transaction enjoy only such tax immunity as is afforded by the Constitution itself, and we are not now concerned with the extent and the appropriate exercise of the power of Congress to free such transactions from state taxation of individuals in such circumstances that the economic burden of the tax is passed on to the National Government. The Government, rightly we think, disclaims any contention that the Constitution, unaided by Congressional legislation, prohibits a tax exacted from the contractors merely because it is passed on economically, by the terms of the contract or otherwise, as a part of the construction cost to the Government. So far as such a non-discriminatory state tax upon the contractor enters into the cost of the materials

---

[1] See proposed Senate Amendment No. 120, to H. R. 8438, which became the Act of June 11, 1940, 54 Stat. 265; Cong. Rec., 76th Cong., 3rd Sess., Vol. 86, Part 7, pp. 7518–19, 7527–7535, 7648.

to the Government, that is but a normal incident of the organization within the same territory of two independent taxing sovereignties. The asserted right of the one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity. So far as a different view has prevailed, see *Panhandle Oil Co.* v. *Knox, supra; Graves* v. *Texas Co., supra,* we think it no longer tenable. See *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514; *Trinity farm Co.* v. *Grosjean,* 291 U. S. 466; *James* v. *Dravo Contracting Co.,* 302 U. S. 134, 160; *Helvering* v. *Gerhardt,* 304 U. S. 405, 416; *Graves* v. *New York ex rel. O'Keefe,* 306 U. S. 466.

The contention of the Government is that the tax is invalid because it is laid in such manner that, in the circumstances of this case, its legal incidence is on the Government rather than on the contractors, who ordered the lumber and paid for it but who, as the Government insists, have so acted for the Government as to place it in the role of a purchaser of the lumber. The argument runs: the Government was a purchaser of the lumber, and but for its immunity from suit and from taxation, the state applying its taxing statute could demand the tax from the Government just as from a private individual who had employed a contractor to do construction work upon a like cost-plus contract.

The soundness of this conclusion turns on the terms of the contract and the rights and obligations of the parties under it. The taxing statute, as the Alabama courts have held, makes the "purchaser" liable for the tax to the seller, who is required "to add to the sales price" the amount of the tax and collect it when the sales price is collected, whether the sale is for cash or on credit. Who, in any particular transaction like the present, is a "purchaser" within the meaning of the statute, is a question of state

law on which only the Supreme Court of Alabama can speak with final authority. But it seems plain, as the Government concedes and as we assume for present purposes, that under the provisions of the statute the purchaser of tangible goods who is subjected to the tax measured by the sales price, is the person who orders and pays for them when the sale is for cash or who is legally obligated to pay for them if the sale is on credit. The Government's contention is that it has a constitutional immunity from state taxation on its purchases and that this was sufficiently a Government purchase to come within the asserted immunity.

As the sale of the lumber by King and Boozer was not for cash, the precise question is whether the Government became obligated to pay for the lumber and so was the purchaser whom the statute taxes, but for the claimed immunity. By the cost-plus contract the contractors undertook to "furnish the labor, materials, tools, machinery, equipment, facilities, supplies not furnished by the Government, and services, and to do all things necessary for the completion of" the specified work. In consideration of this the Government undertook to pay a fixed fee to the contractors and to reimburse them for specified expenses including their expenditures for all supplies and materials and "state or local taxes . . . which the contractor may be required on account of his contract to pay." The contract provided that the title to all materials and supplies for which the contractors were "entitled to be reimbursed" should vest in the Government "upon delivery at the site of the work or at an approved storage site and upon inspection and acceptance in writing by the Contracting Officer." The Government reserved the right to furnish any and all materials necessary for completion of the work, to pay freight charges directly to common carriers, and "to pay directly to the persons concerned all sums due from the Contractor for labor, materials or other charges." Upon

termination of the contract by the Government, it under-took to "assume and become liable for all obligations . . . that the Contractor may have theretofore in good faith undertaken or incurred in connection with said work and in accordance with the provisions of this contract."

A section of the contract, designated as one of several "special requirements," stipulated that contractors should "reduce to writing every contract in excess of two thousand dollars ($2,000) made by him for the purpose of the work hereunder for services, materials, supplies . . .; insert therein a provision that such contract is assignable to the Government; make all such contracts in his own name, and not bind or purport to bind the Government or the Contracting Officer thereunder." While this section refers to contracts in excess of $2,000, we think all the provisions which we have mentioned, read together, plainly contemplate that the contractors were to purchase in their own names and on their own credit all the materials required, unless the Government should elect to furnish them; that the Government was not to be bound by their purchase contracts, but was obligated only to reimburse the contractors when the materials purchased should be delivered, inspected and accepted at the site.

The course of business followed in the purchase of the lumber conformed in every material respect to the contract. King and Boozer submitted to the contractors in advance a proposal in writing to supply as ordered, at specified prices, all the lumber of certain description required for use in performing their contract with the Government. The contractors, after procuring approval by the contracting officer of the particular written order for lumber with which we are presently concerned, placed it with King and Boozer on January 17, 1941. It directed shipment to the Construction Quartermaster at the site "for account of" the contractors and stated "this purchase order does not bind, nor purport to bind, the United States

Government or Government officers." King and Boozer thereupon shipped the lumber ordered by the contractors by contract trucks to the site as directed, where it was used in performance of the contract. The sellers delivered to the contractors the invoice of the lumber, stating that it was "sold to the United States Construction Quartermaster %" (for account of) the contractors.[2] The invoice was then approved by the Construction Quartermaster for payment; the contractors paid King and Boozer by their check the amount of the invoice and were later reimbursed by the Government for the cost of the lumber.

We think, as the Supreme Court of Alabama held, that the legal effect of the transaction which we have detailed was to obligate the contractors to pay for the lumber. The lumber was sold and delivered on the order of the contractors, which stipulated that the Government should not be bound to pay for it. It was in fact paid for by the contractors, who were reimbursed by the Government pursuant to their contract with it. The contractors were thus purchasers of the lumber, within the meaning of the taxing statute, and as such were subject to the tax. They were not relieved of the liability to pay the tax either because the contractors, in a loose and general sense, were acting for the Government in purchasing the lumber or, as the Alabama Supreme Court seems to have thought, because the economic burden of the tax imposed upon the purchaser would be shifted to the Government by reason of its contract to reimburse the contractors.

---

[2] The statement that the lumber was "sold" to the Construction Quartermaster appears to have been inadvertent. On the argument the Government conceded that this was not the usual practice. The invoices appearing of record in *Curry* v. *United States, post,* p. 14, issued to the same contractors for supplies ordered by them and delivered at the same site stated that the supplies were sold to the contractors.

The Government, to support its thesis that it was the purchaser, insists that title to the lumber passed to the Government on shipment by the seller, and points to the very extensive control by the Government over all purchases made by the contractors. It emphasizes the fact that the contract reserves to Government officers the decision of whether to buy and what to buy; that purchases of materials of $500 or over could be made by the contractors only when approved in advance by the contracting officer; that the Government reserved the right to approve the price, to furnish the materials itself, if it so elected; and that in the case of the lumber presently involved, the Government inspected and approved the lumber before shipment. From these circumstances it concludes that the Government was the purchaser. The necessary corollary of its position is that the Government, if a purchaser within the taxing statute, became obligated to pay the purchase price.

But however extensively the Government may have reserved the right to restrict or control the action of the contractors in other respects, neither the reservation nor the exercise of that power gave to the contractors the status of agents of the Government to enter into contracts or to pledge its credit. See *United States* v. *Algoma Lumber Co.,* 305 U. S. 415, 421; *United States* v. *Driscoll,* 96 U. S. 421. It can hardly be said that the contractors were not free to obligate themselves for the purchase of material ordered. The contract contemplated that they should do so and that the Government should reimburse them for their expenditures. It is equally plain that they did not assume to bind the Government to pay for the lumber by their order, approved by the Contracting Officer, which stipulated that it did not bind or purport to bind the Government. The circumstance that the title to the lumber passed to the Government on delivery

does not obligate it to the contractor's vendor under a cost-plus contract more than under a lump sum contract. Cf. *James* v. *Dravo Contracting Co., supra; United States* v. *Driscoll, supra.*

We cannot say that the contractors were not, or that the Government was, bound to pay the purchase price, or that the contractors were not the purchasers on whom the statute lays the tax. The added circumstance that they were bound by their contract to furnish the purchased material to the Government and entitled to be reimbursed by it for the cost, including the tax, no more results in an infringement of the Government immunity than did the tax laid upon the contractor's gross receipts from the Government in *James* v. *Dravo Contracting Co., supra.* See *Metcalf & Eddy* v. *Mitchell, supra,* 523, 524; *Trinityfarm Co.* v. *Grosjean, supra,* 472; *Helvering* v. *Gerhardt, supra,* 416; *Graves* v. *New York ex rel. O'Keefe, supra,* 483.

*Reversed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.