Porto Rico Iron Works, Inc., Plaintiff and Appellee, *v.* Rafael Buscaglia, Treasurer of Puerto Rico, Defendant and Appellant.

No. 8710. Argued July 8, 1943.—Decided January 25, 1944.

*M. Rodríguez Ramos, Acting Attorney General, A. E. Franco Cabrero, Deputy Attorney General,* and *Carmen B. Hernández, Law Clerk,* for appellant. *Raúl Matos* for appellee.

Mr. Acting Chief Justice Travieso delivered the opinion of the court.

The complaint filed in this case sets up seven causes of action, and the total sum sought to be recovered is $13,670.97, the amount of the taxes paid under protest by the plaintiff. The defendant interposed a demurrer thereto on the ground of insufficiency, and upon the same being overruled, the district court, at the instance of the defendant, rendered judgment sustaining the complaint in all its parts and adjudging the defendant to pay the total sum claimed, with interest thereon at the rate of 6 per cent from the filing of the complaint, and costs.

From that judgment the present appeal has been taken.

1. In the first cause of action the plaintiff, Porto Rico Iron Works, Inc., claims the return of $1,842.86 paid under protest as excise taxes on certain articles introduced into Puerto Rico from the United States, on the ground that the same are not subject to the payment of said taxes under the Internal Revenue Law of Puerto Rico. The articles in question are certain semitrailers and parts for a road grader.

As described in the complaint "a 'road grader' is a device used in the building of roads which consists of a scraper (*pala*) vertically operated by a piston which forms part of the same, said scraper being pulled by a tractor" and "a 'semitrailer' is a platform on pneumatic wheels built so as to be pulled by trucks and lacks a motor or other means of self-propulsion, so designed as not to be capable of being

converted into a self-propelling vehicle and it can be moved only by the use of a traction force."

Undoubtedly it does not appear from the complaint that said devices are self-propelling vehicles.

The excise was levied on the basis of the provisions of subdivisions 7 and 8 of §16 of Act No. 85 of August 20, 1925, as subsequently amended. Said Act is known as the Internal Revenue Law of Puerto Rico. The subdivisions in question, in so far as now pertinent, read as follows (Act No. 158 of May 13, 1941, p. 948):

"7. *Self-propelling vehicles and apparatus.*—On all automobiles, motorcycles, locomotives, tractors and other similar self-propelling vehicles by whatever name known, including chassis, motors, auto-bodies without motors, tanks, batteries, motors for same and on all parts or accessories for any of the articles herein mentioned, excluding pneumatic tires, inner tubes and solid tires, sold, transferred, manufactured, or used in, or introduced into, Puerto Rico, a tax of twelve and one-half (12½) per cent on the selling price in Puerto Rico; *Provided,* That persons not residing in Puerto Rico who use their own automobiles for personal use only shall be exempt from the payment of the tax prescribed by this Act for such period as they shall use a special license of the Commissioner of the Interior. On the expiration of that period or upon acquiring the regular license of the said Commissioner, or before, if the automobile is devoted to purposes other than the above-mentioned, the internal revenue tax shall be paid.

"8. *Other self-propelling vehicles and apparatus.*—On every auto-wagon, truck, tractor, and other similar self-propelling vehicles (by whatever name known), including chassis, motors, bodies for trucks, auto-wagons and tractors, without motors, tanks, batteries, motors for same, and on all parts or accesories for any of the articles herein mentioned, excluding pneumatic tires, inner tubes and solid tires, sold, transferred, manufactured, or used in, or introduced into, Puerto Rico, a tax of twelve and one-half (12½) per cent on the selling price in Puerto Rico."

The lower court in its opinion construing the foregoing provisions of the cited Act, said:

"A mere reading of those subdivisions suffices to show that, as indicated by their headings, they are confined to the imposition of a

tax on self-propelling vehicles and apparatus and all parts and accessories for the same. Although they mention 'autobodies without motors' and 'bodies for tractors without motors,' this refers to bodies for self-propelling vehicles which only lack the motors that, upon being installed therein, serve to complete the vehicles. The self-propelling vehicle is taxed as are taxed all the parts therefor which may be introduced separately. Thus, on the one hand, the body of the vehicle without motor is mentioned, and immediately thereafter mention is made of the motor itself. In subdivision 8, which is the one that the defendant considers as really applicable, the phrase 'tractors without motor' is modified by the word 'bodies' and by the preceding phrase 'other similar self-propelling vehicles.' The excise is imposed on auto-wagons, trucks, tractors, and other similar self-propelling vehicles . . . including chassis, motors, bodies for trucks, auto-wagons and tractors, without motors, tanks, batteries, motors for same, and on all parts or accessories for any of the articles herein mentioned. . . ."

"It should be noted that subdivision 8, which formerly mentioned motor vehicles, launches, etc., was expressly amended in the sense of defining clearly that it refers to self-propelling vehicles, which concept was not expressly set forth in the former wording of said subdivision.

"We think that the first count of the complaint states facts sufficient to justify the return of the taxes to which it refers."

We accept as sound and convincing the foregoing conclusion of the lower court. Unquestionably the articles on which the excise was sought to be levied are not the self-propelling vehicles to which subdivisions 7 and 8 of the cited Internal Revenue Law refer, and as they are not comprised in the classification made by the lawmaker; they are not subject to taxation.

The appellant urges that these apparatus are not included as self-propelling vehicles but as autobodies without motors. We do not agree with this contention. An autobody without motor is nothing else than a part of a self-propelling vehicle which only requires the installation of a motor therein in order to be converted into a complete self-propelling vehicle, which is not the case of the apparatus involved in the first cause of action. None of said apparatus could ever be a

self-propelling vehicle, as it lacks a motor and a place for installing the same therein. It moves only when it is pulled by a self-propelling vehicle.

■ The appellee calls to our attention the fact that the Legislature, by §2 of Act No. 116 of May 12, 1943 (Laws of 1943, p. 334), added a new subdivision 8(a) to §16 of the Internal Revenue Law. Said §2 provides as follows:

"Section 2.—To add a new subdivision under No. 8(a) to Section 16 of Act No. 85, approved August 20, 1925, as subsequently amended, which shall read as follows:

" '8(a)—*Vehicles Not Self-Propelling.*—On all vehicles not self-propelling, and on all parts or accessories therefor, excepting vehicles expressly manufactured to be drawn by human or animal power, sold, transferred, manufactured, used or consumed in, or brought into Puerto Rico, a tax of twenty (20) per cent on the selling price of such vehicle in Puerto Rico.' "

The new law is prospective in character, and as it was enacted subsequent to the occurrence of the facts, the first cause of action is unaffected thereby.

■ 2–3. The facts on which the second and third causes of action are based are as follows:

The plaintiff entered into a contract with the Housing Authority of Puerto Rico for the construction of a housing development in Fajardo at a total cost of $286,521.79, including materials and labor, and made another contract with the Housing Authority of Ponce for the construction of another housing development at a total cost of $201,900. The Treasurer, pursuant to subdivision 4 of §16 of the Internal Revenue Law, demanded from the plaintiff the payment of a 2-per cent tax on the amount of each of said contracts. The plaintiff paid under protest $5,730.44 on the first contract and $4,038 on the second, despite the fact that it had already paid a 2-per cent tax amounting to $1,932.64 on the materials furnished for the first construction work and $1,279.88 on those supplied for the second.

The lower court sustained both causes of action and ordered the return of the amounts collected.

The holding that the contracts for the construction of the two housing developments were exempt from the 2-per cent excise on the cost of the work was based on the ground that, in the opinion of the trial court, §§8(h), 9, and 22 of Act No. 126, approved May 6, 1938, grant such exemption. The pertinent portions of said Section read thus:

"Section 8. . . .

"(h) . . . No provisions of law with respect to the acquisition, operation or disposition of property by other public bodies shall be applicable to an authority unless the legislature shall specifically so state.

"Section 9.—It is hereby declared to be the policy of Puerto Rico that each authority shall manage and operate its housing projects in an efficient manner so as to enable it to fix the rentals for dwelling accommodations at the lowest possible rates consistent with its providing decent, safe and sanitary dwelling accommodations, and that no authority shall construct or operate any such project for profit, or as a source or revenue to the government of Puerto Rico or the municipality. . . .

"Section 22.—The property of an authority is declared to be public property of public utility used for essential public and governmental purposes and an authority shall be exempt from all taxes and special assessments of the government of Puerto Rico, its municipalities and other subdivisions; . . ."

The fourth paragraph of the subdivision entitled "Other Excises' of §16 of the Internal Revenue Law (Act No. 85 of August 20, 1925, as amended by Act No. 158 of May 13, 1941, Laws of 1941, p. 948) provides as follows:

"4. *Contracts.*—Any person obtaining contracts for the supply of any material, equipment, tools, or machinery, or for the execution of any work, entered into with a department of the insular or municipal government, or with any organization dependent on the insular or municipal government, or with any organization, board or commission created by the laws of Puerto Rico, or with any official or

employee in the service of the insular or municipal government, or before any official or member of an organization, board, or commission created by the laws of Puerto Rico, shall pay as an excise tax two (2) per cent of the amount of the contract; *Provided,* That if during the execution of said contract the amount thereof is increased, the contractor or furnisher shall likewise pay an additional tax equivalent to two (2) per cent of the increase obtained."

It will be noted that by the first of the Acts just quoted the Housing Authorities of Puerto Rico as well as their properties are exempt from all taxes, and by the second Act there is levied "on any person obtaining contracts for the supply of" materials, etc., or for the execution of any work contracted with the insular or municipal government or any agency or officer thereof, a tax of 2 per cent on the amount of the contract.

The appellee maintains that the imposition of such tax on its aforesaid contracts is illegal because the contracts with the Housing Authorities of Puerto Rico are exempt from the payment of the tax by virtue of the provisions of the above-cited Housing Authorities Law.

The lower court declared that "regard being had for the letter and spirit of Act No. 126, the contracts for construction work entered into with the Housing Authority of Puerto Rico are exempt from excise taxation, as such excise constitutes one of the provisions of law with respect to the acquisition of property by public entities to which reference is made in §8(h) of Act No. 126."

Against that reasoning the defendant-appellant argues that "despite the approval of Act No. 126 of May 6, 1938, that Act does not exempt the contractor, or the plaintiff-appellee, from the payment of the 2 per cent tax on the amount of the contract which had been fixed by the Excise Act in force, . . ." or, in other words, that the tax is one laid on the contract and not on the work itself.

The only question in controversy is whether the above-mentioned tax is one which falls on the contractor as such or on the Housing Authority.

It is true that, as stated by the lower court, Act No. 126, *supra*, expresses a legislative intent to place the Housing Authorities on a privileged plane; but we do not think that it was the intention of the Legislature to place those who contract with them in a different position from that of other contractors who perform work for the government. The lower court maintains that "even though the excise . . . must be paid by the contractor, the existence of such excise unavoidably increases the cost of the work, and such increase is unavoidably reflected in the cost which the other party must pay. The statute imposing the excise becomes, therefore, a law which affects the acquisition of public works by public entitities; and the elimination of the excise as to works belonging to the Housing Authorities lowers the cost of such works and is one of the factors which tend to enable the Authorities to fix lower rentals."

We do not agree with the above statement of the lower court. It is true that excises belong to that class of taxes known as indirect taxes, that is, to those whose burden may be shifted to another person; but this does not mean that such a result must necessarily follow.

The tax herein is undoubtedly one laid on the contractor. It is not in either form or substance a tax imposed on the Housing Authority, nor is it paid by the latter out of its own funds. It is assessed on the basis of the amount of the contract, and it constitutes a burden which the contractor may or may not shift to the Authority; but we can not say that there is being laid on the latter an economic burden so tangible as to justify the court in declaring that the tax is imposed on the Housing Authority, or that the same affects the acquisition of construction works by that entity.

In the case of *James* v. *Dravo Contracting Co.* (1937) 302 U. S. 134, 159, 160, there was involved a tax of 2 per

cent levied on the gross receipts of contractors within the State of West Virginia. The Supreme Court of the United States upheld the validity of the tax, saying:

"The contention ultimately rests upon the point that the tax increases the cost to the Government of the service rendered by the taxpayer. But this is not necessarily so. The contractor, taking into consideration the state of the competitive market for the service, may be willing to bear the tax and absorb it in his estimated profit rather than lose the contract. . . .

"But if it be assumed that the gross receipts tax may increase the cost to the Government, that fact would not invalidate the tax. With respect to that effect, a tax on the contractor's gross receipts would not differ from a tax on the contractor's property and equipment necessarily used in the performance of the contract. Concededly, such a tax may validly be laid. Property taxes are naturally, as in this case, reckoned as a part of the expense of doing the work. Taxes may validly be laid not only on the contractor's machinery but on the fuel used to operate it."

The lower court expressed the opinion that the case of *Alabama* v. *King & Boozer* (1941), 314 U. S. 1, 62 S. Ct. 43, 86 L. ed. 3, relied on by the appellant Treasurer, has no application to the case at bar, inasmuch as in that case there was not involved any existing statute expressing a legislative intent to place the Federal Government in a more advantageous position than that of the other buyers of merchandise. Because we disagree with that opinion and believe that the doctrine involved is applicable to the instant case, we will make a brief analysis of the cited case.

King & Boozer, a partnership, sold lumber on the order of "cost-plus-a-fixed-fee" contractors. The lumber was to be used by the latter in constructing an army camp for the United States. The State of Alabama imposed on it a tax which was chargeable to the seller but which the latter was required by law to add to the selling price of the materials thus collecting it from the buyer.

King & Boozer alleged that in this specific case the tax could not be collected, inasmuch as it was laid upon the United States thus violating the Constitution.

The Supreme Court of Alabama held that, although the tax was collected from the contractors by the seller of the materials, said contractors were so related by their contracts to the Government, and were so acting for the Government, that the latter was in effect the buyer of the lumber, the result being the imposition of a tax on a transaction by which the United States secured the things necessary for carrying out a governmental function, and this constituted an infringement of the constitutional immunity.

The said Supreme Court reversed the decision of the Alabama court. From the opinion we copy the following extracts which we regard as applicable to the case at bar:

". . . The Government, rightly we think, disclaims any contention that the Constitution, unaided by Congressional legislation, prohibits a tax exacted from the contractors merely because it is passed on economically, by the terms of the contract or otherwise, as a part of the construction cost to the Government. So far as such a non-discriminatory state tax upon the contractor enters into the cost of the materials to the Government, that is but a normal incident of the organization within the same territory of two independent taxing sovereignties. The asserted right of the one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity. . . .

" *     *     *     *     *     *     *

"We think, as the Supreme Court of Alabama held, that the legal effect of the transaction which we have detailed was to obligate the contractors to pay for the lumber. The lumber was sold and delivered on the order of the contractors, which stipulated that the Government should not be bound to pay for it. It was in fact paid for by the contractors, who were reimbursed by the Government pursuant to their contract with it. The contractors were thus purchasers of the lumber, within the meaning of the taxing statute, and

as such were subject to the tax. They were not relieved of the liability to pay the tax either because the contractors, in a loose and general sense, were acting for the Government in purchasing the lumber or, as the Alabama Supreme Court seems to have thought, because the economic burden of the tax imposed upon the purchaser would be shifted to the Government by reason of its contract to reimburse the contractors.

"  *         *         *         *         *         *         *

"We cannot say that the contractors were not, or that the Government was, bound to pay the purchase price, or that the contractors were not the purchasers on whom the statute lays the tax. The added circumstance that they were bound by their contract to furnish the purchased material to the Government and entitled to be reimbursed by it for the cost, including the tax, no more results in an infringement of the Government immunity than did the tax laid upon the contractor's gross receipts from the Government in *James v. Dravo Contracting Co., supra. . . .*"

The tax involved in the second and third causes of action is a lump tax of "2 per cent on the amount of the contract." As already stated, the total cost to the Housing Authority of Puerto Rico of the Fajardo Housing Development was $286,521.79, as the cost of the Ponce Development was $201,900. We have also adverted to the amount of the taxes paid by the contractor in both instances. In the complaint it is alleged that the cost of both works included materials and labor, but we fail to find therein any allegation as to whether the contractor passed the amount of the taxes on to the respective governmental authorities or as to whether it included that amount in its estimate of profits.

The situation presented to us is, then, one in which a contractor undertook to execute a construction work for a lump sum which included materials, labor, and profits. The contractor paid the tax of "2 per cent on the amount of the contract" and now seeks to recover the amounts paid relying on the exemption which §22 of Act No. 126 of May 6, 1938, grants to the properties belonging to any authority used for essential public and governmental purposes.

Applying to the facts of those two causes of action the Federal decisions which we have examined, we are constrained to hold that the lower court erred in overruling the demurrer to the second and third causes of action and in rendering judgment in favor of the plaintiff for the sums of $5,730.44 and $4,038, respectively claimed therein.

■ It now remains to consider and determine whether the plaintiff is entitled to the return of the sums of $1,842.86 and $1,932.64, which it alleges to have paid as excise taxes on materials purchased for and used in the two construction works, on the ground that a double tax is involved.

In the case of *People* v. *Dávila*, 47 P.R.R. 337, a municipal ordinance imposed a fee of $5 for a license to slaughter cattle, and also an excise tax of 1 cent per pound of meat slaughtered. It was held that the ordinance was valid and did not violate the constitutional provision against double taxation because in order that double taxation may exist "both taxes must be of the same nature and fall on the same thing," which did not occur in said case.

In *West India Oil Co.* v. *Domenech, Treas.*, 49 P.R.R. 783, 788, the Government of Puerto Rico, pursuant to a public auction held, entered into a contract with the West India Oil Company for the purchase of a certain amount of asphalt. The selling company paid the excise tax of 1 per cent on the total price of the delivered asphalt which had been levied in accordance with subdivision 5, §16 or Act No. 85 of 1925, as amended by Act No. 17 of 1927, providing for the imposition of said excise tax on any person obtaining a contract for the supply of materials to the Insular Government or to any of its dependencies. After said excise had been paid, the Treasurer demanded from the selling company the payment of a sales tax of 2 per cent on the price of the asphalt delivered to the Government. The company paid the same under protest and sought to recover the amount paid, on the ground that a double tax was involved.

In the opinion delivered in said case, we copied a note from 60 L.R.A. 366, as follows:

"In the cases of alleged duplicate taxation there is always the preliminary question: Is the tax now disputed really double? Of course, it is not; if it rests upon different subjects although the same taxpayer must pay it; or if it rests upon different taxpayers although a burden upon the same property; or, if it is laid by different governments, then, it does not violate the constitutional rule of equality and uniformity of taxation. . . .

"Taxation is not double unless it bears upon the same property within the same jurisdiction."

See *Monllor & Boscio, Sucrs.,* v. *Sancho, Treas.,* 61 P.R.R. 63.

Applying the above-quoted rule to the facts of the case, we held that a duplicate taxation was really involved inasmuch as both taxes rested upon the same object, the price or value of the asphalt sold to the Government; they must be paid by the same taxpayer, the West India Oil Co.; and they were laid not by different governments but by the same government. See also *Casal* v. *Sancho, Treas.,* 53 P.R.R. 386.

The present case is easily distinguished from those of *West India Oil Co.* and *Casal,* which we have just cited. In the latter cases there were involved contracts for furnishing or selling materials to the Government. And it was on such sales of materials that both taxes were levied; that of 1 per cent on the amount of the contract of sale of materials, and that of 2 per cent on the sale of the same materials as articles of trade.

We are dealing, then, with two clearly different taxes. One laid on the amount of the contract for the execution of the work including materials, labor, and profits; and the other on the materials used in the construction work. In other words, a tax on the materials and another on the amount of the finished work. Therefore, the two taxes or excises do not fall on the same thing.

4 and 5. The fourth and fifth causes of action refer to excises levied on materials used in the construction of works executed pursuant to contracts with two municipalities. The plaintiff paid the excise or tax of 2 per cent on the total amount of each of said contracts with the municipalities and subsequently paid under protest the excise on the materials used in the works.

Both causes of action rest on the ground that the Treasurer lacks legal authority to impose a double tax, that is, a tax on the amount of said contracts and an excise on the materials used in the execution of the work covered by those contracts.

The reasoning we have used in passing upon the question of double taxation raised by the second and third causes of action is also applicable to the determination of the two causes of action now discussed. The lower court erred in overruling the demurrer and in not dismissing these causes of action.

6. The sixth cause of action sets forth, in brief, that the plaintiff corporation entered into a contract with the Bureau of Supplies, Printing, and Transportation of the Insular Government for furnishing certain materials which are described in the complaint. On the amount of said contract there was levied by the defendant Treasurer and paid by the appellee a tax of 2 per cent; and, in addition, the Treasurer assessed to the plaintiff and appellee an excise tax on the introduction of said materials which was paid under protest.

The Porto Rico Iron Works, Inc., alleged that in this case there was also involved a double tax which the Treasurer lacked legal authority to impose.

We agree with the appellee that in this particular instance there is a duplicate taxation. The contract entered into with the Bureau of Supplies, Printing, and Transportation for the furnishing of materials by The Porto Rico Iron

Works, is one of sale of those materials, so that the excise of 2 per cent levied on the amount of said contract is a tax on said sale of materials. The Treasurer was not entitled to demand payment of the other excise on the introduction of those same materials furnished to the Government, for that was equivalent to levying a double tax on the same property. The cases of *West India Oil Co.* v. *Domenech, Treas., supra; Casal* v. *Sancho, Treas.*, 53 P.R.R. 386; and *Rossi* v. *Sancho, Treas.*, 53 P.R.R. 467, are applicable, and the tax paid under protest must be returned in this particular case.

7. By the seventh cause of action it is set forth that the plaintiff corporation Porto Rico Iron Works, Inc., introduced in Puerto Rico certain articles of merchandise which were sold and transferred to the United States directly or through its agencies or instrumentalities, except some that were sold by the plaintiff to McCloskey & Co. to be used in connection with contracts entered into between that company and the United States of America on a cost-plus-a-fixed-fee basis, in spite of which the defendant, without any justifiable cause, assessed to the plaintiff an excise tax on the introduction of said articles of merchandise which was paid under protest by the appellee and which the latter considers as illegal and improper. The amount sought to be recovered is $760.91.

The appellee corporation urges that said articles of merchandise have always been exempt from the payment of taxes or excises by the Internal Revenue Law, inasmuch as the same were introduced into Puerto Rico to be sold and transferred to the United States, its agencies or instrumentalities. It further urges that the same are expressly exempt from taxation by §2 of Act No. 158 of May 13, 1941 (Laws of 1941, p. 948). Said Section reads as follows:

"Section 2.—As an emergency exists in regard to the national-defense work in Puerto Rico, it is provided that, from and after this Act takes effect and for the period of one year, every article, effect, or merchandise manufactured in, or brought into, Puerto Rico

that is sold or transferred to the United States of America, its agencies and instrumentalities, including cost-plus-fixed-fee contractors, for their use in works of the Government of the United States, is hereby exempt from the payment of any excise tax that may have been levied under the provisions of any Act in force in Puerto Rico; *Provided*, That the Treasurer of Puerto Rico is hereby empowered to return, and he is directed to return, any excise tax that has been paid to the insular treasury after April 7, 1941, on any article, effect, or merchandise sold or transferred to the United States of América, its agencies and instrumentalities including cost-plus-fixed-fee contractors, and which have been used in any work of the Government of the United States.''

As may be seen, the above-quoted Section of Act No. 158 of 1941, shows the express intention of our legislature to exempt from the payment of taxes for one year, every article, effect, or merchandise manufactured in, or brought into, Puerto Rico that is sold or transferred to the United States of America, its agencies or instrumentalities, including cost-plus-a-fixed-fee contractors for their use in works of the Government of the United States. Undoubtedly, the merchandise and articles introduced by the plaintiff and enumerated in the seventh cause of action of the complaint are fully covered by the exemption established by that statute.

We regard as fully appropriate that part of the opinion of the lower court which deals with this question and which, in so far as now pertinent, reads as follows:

''The only ground of demurrer set up by the plaintiff as to the seventh cause of action is the failure to allege therein that, upon introducing the materials, the plaintiff had complied with certain alleged regulations said to have been promulgated by the Treasurer of Puerto Rico on March 25, 1942. Neither the regulations nor the authority of the Treasurer to promulgate the same has been shown to us. It is remarkable that it should have been promulgated almost a year after Section 2 of Act No. 158 had been in force and when the one-year 'period of effectiveness of said section was about to expire. If the plaintiff introduced and sold merchandise prior to the promulgation of the regulations, it could hardly comply with the provisions thereof. On the other hand, the regulations could not be

in conflict with the act, and the act itself grants the exemption claimed by the plaintiff, assuming that the facts alleged in its seventh cause of action are true. This last cause of action also states sufficient facts.'' (Rec., pp. 32 and 33.)

We agree with the lower court that the seventh cause of action lies.

For the reasons stated the judgment appealed from must be modified in so far as it sustains the second, third, fourth, and fifth causes of action, each and all of which must be and are hereby dismissed, and as thus modified, the judgment is affirmed in so far as it sustains the first, sixth, and seventh causes of action.

Mr. Justice Snyder did not participate herein.