WEST INDIA OIL COMPANY (P. R.), ETC., Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent.

No. 30. Argued February 5, 1945.—Decided May 28, 1945.

*H. S. McConnell* and *Joaquín Lago Padín* for petitioner. *Jesús M. González, Acting Attorney General, M. Velázquez Flores* and *Ramón Gandía Biscombe, Deputy Attorneys General,* for intervener, Treasurer of Puerto Rico, respondent in the main proceeding.

Mr. Justice De Jesús delivered the opinion of the court.

The Legislative Assembly of Puerto Rico granted a tax exemption [1] to the Caribbean Atlantic Air Lines, Inc., for a term of fifteen years. For some time thereafter the transport air line bought from the West India Oil Company the gasoline needed, the latter being reimbursed by the Treasurer the tax which it had paid upon the introduction in Puerto Rico of the gasoline sold to the transport air line. In 1942 the Treasurer published Regulation No. 44 (Revised) by which he established the procedure by virtue of which the seller could obtain the reimbursement of the tax on the gasoline which it had sold to the company exempted from payment.

In the period covered between May and December 1943, West India Oil Company sold to the transport air line 77,500

---

[1] Act No. 17 of April 11 of 1939 (p. 326).

gallons of gasoline and upon filing with the Treasurer the report required by Regulation No. 44 to obtain the reimbursement of the tax, the Treasurer delayed the matter for some time and then notified the seller that he could not refund the tax under the law which granted the exemption. He stated, however, that he was willing to return it under Act No. 1 of June 22, 1942 (Second Special Session, p. 2) which exempted from payment the gasoline introduced into Puerto Rico and consumed outside. To this end the seller had to show the quantity of gasoline consumed in Puerto Rico and that consumed outside of the Island. The seller did so protesting that the filing of this report should not be understood as a waiver of the exemption granted to the transport air line, by which exemption it claimed the refund of the tax on all the gasoline consumed within as well as outside the Island.[2]

The report filed with the Treasurer disclosed that of the 77,500 gallons sold to the transportation air line, 72,601 had been consumed outside the Island and the remaining 4,899 gallons in the workshop of the company in Puerto Rico. The Treasurer refunded the tax on the gasoline consumed outside the Island but refused to refund the amount of $489.90, that is, the tax on the gasoline consumed in Puerto Rico. He based his decision on the fact that the gasoline tax was assessed on the West India Oil Company simply because it had introduced the gasoline into Puerto Rico, and insisted that although said tax devolved economically on the consumer, since the latter had not imported the gasoline, it was not entitled to any refund, for the West India Oil Company. before selling it to the consumer, had already paid the tax

---

[2] Act No. 1 of June 22, 1942 exempted from taxation the petroleum products that may be distributed from Puerto Rico for use outside of the Island from and after June 15, 1942, during the present state of war and until 90 days after the United States ceases hostilities. But the exemption granted to the Caribbean Atlantic Air Lines, Inc., under Act No. 17 of 1939 covered all the gasoline consumed by the company in as well as out of the Island for a period of fifteen years.

which it was bound to pay under the law upon introducing the gasoline in Puerto Rico.

The West India Oil Company appealed to the Tax Court,[3] and the latter, relying on *Alabama* v. *King & Boozer*, 314 U. S. 1, 86 L. ed. 3 (1941), invoked by the Treasurer, upheld his decision.

 The *Alabama* case is not applicable to the one at bar. The two cases involved two immunities of different sources and scope. The *Alabama* case deals with the reciprocal immunity enjoyed by the Federal and State Governments under a constitutional principle,[4] from the payment of taxes levied on each other. In the present case the immunity involved has its source in the special act of the Legislative Assembly which sets forth the motive and scope of the exemption.

Let us examine the facts and the doctrine of the *Alabama* case. An Alabama statute levied a tax of 2 per cent on the gross sales prize of materials sold to the contractors. The statute provided that even though the tax was laid on the seller, who was called "Taxpayer", it was the duty of the seller to add the tax to the sales and collect the total amount from the purchaser. A section of the statute excluded from the tax the proceeds of sales which under the Constitution or laws of the United States the State is prohibited from taxing. King & Boozer sold construction material to a person who had a contract with the Federal Government on a "cost-plus-a-fixed-fee" base. The sale was made

---

[3] The West India Oil Company filed the complaint for the use of the Caribbean Atlantic Air Lines, Inc., the latter having agreed to pay to the former the amount of $489.90 should the Treasurer fail to refund the tax.

[4] That principle while not expressly stated in the Constitution necessarily arises out of the dual governments, the Federal and State, which rule over the same territory. *McCulloch* v. *Maryland*, 4 Wheat. 316, 400, 436 (U.S., 1819); *The Collector* v. *Day*, 11 Wall. 113 (U. S., 1870). The latter was reversed by *Graves* v. *N.Y. ex rel. O'Keefe*, 306 U.S. 466 (1939), in so far as it recognized an implied constitutional immunity against the payment of income tax on the salaries of the officers or employees of the National or State Government or its instrumentalities.

in the name of the contractor and the latter at no time acted or was authorized to act in the name of the United States Government. The materials bought were to be used in constructing an army camp and the Government bound itself with the contractor to reimburse him the price of the materials, including any tax thereon, upon delivery at the site of the work. King & Boozer collected from the contractor the price of the materials, but failed to collect the tax because they understood that since the materials were to be used by the Federal Government they were exempted from taxation. In the action brought by King & Boozer to avoid the collection of the tax by the State officers, the Supreme Court of the United States held: that the Alabama statute imposed on the contractor the duty to pay the tax; that since the purchase had been made in the name of the contractor, who had been granted no exemption by Congress, the legal burden of the tax was on the contractor and that although the economical burden of the tax was passed to the Federal Government, since it ultimately reimbursed the contractor the materials cost and the tax, such circumstances did not exclude the payment of tax, for inasmuch as the tax is part of the cost of the materials which were to be used in the Government work, that was only a normal incident of the organization within the same territory of two independent taxing sovereignties.

The principle applied in the *Alabama* case is best illustrated in *Trinityfarm Co.* v. *Grosjean,* 291 U.S. 466 (1934). The later case dealt with a tax levied by the State of Louisiana on gasoline introduced and consumed within the State. A contractor who worked in construction for the Federal Government, introduced into the State a large quantity of gasoline needed in the operation of machinery employed to do the work. The gasoline was bought in the name of the contractor. The question to be determined was whether because of the fact that the gasoline was to be used in the Federal construction it was exempt from taxation inasmuch

as the Federal Government would ultimately reimburse the contractor with the cost of the gasoline as well as the tax levied thereon. The Supreme Court of the United States stated that the contractor conceded that the machinery, storage tanks, tools, and other properties used for the performance of the contract were subject to tax levied by the State of Louisiana, that all of said instruments were as closely connected with the work as was the gasoline on which the excise was laid; that there is no room for distinction between the plant so employed and the gasoline used to generate power; and that if the payment of State taxes imposed on appellant's property should in any way affect the Federal Government at all, it at most gives rise to a burden which is consequential and remote and not to one that is necessary, immediate or direct. Appellant's claim was dismissed for lack of merits.[5]

As we have intimated before, since the exemption involved in the present case arises out of an Act of the Legislative Assembly of Puerto Rico, it is in the light of the language used in that Act that we should search for the legislative intent in order to determine the scope of the exemption. The intention is clearly disclosed in § 1 of Act No. 17 of April 11, 1939 (Laws of 1939, p. 326).[6] The lan-

---

[5] Referring to the change which has taken place in the doctrine of reciprocal immunity from tax payment, it has been said: ". . . instead of a doctrine of reciprocal immunity from taxation there has been established a doctrine of reciprocal taxation of the instrumentalities of each other by both the states and the United States, . . ." Hugh Evander Willis, Tendencies in American Constitutional Law, 4 U. of Toronto L. J. 338, 348. See also *Graves v. N.Y. ex rel. O'Keefe*, 306 U. S. 466 (1939).

[6] Section 1 of Act No. 17 provides:

"The development of business and the progress of nations require the most rapid means of communication. The governments of all countries give their most decided cooperation to the development of aviation, and one of the means for the progress of aviation is that the public become accustomed to travel by air. To establish this kind of business in this island is to embark on an adventure and to run the risk of losing money. By Act No. 196 of this Legislature, approved May 15, 1938, the corporation *Aerovías Nacionales Puerto Rico, Inc.*, was exempted from the payment of taxes, and

guage used reveals the legislative intent to protect the air transport line by cooperating with it in the attainment of success, so that it would be able to render air transport service in the Island. It did not set out as a condition for the exemption that the gasoline, in order to be tax free, had to be introduced directly by the company. There is no room for doubt that this could not have been its intention because by imposing this condition, it would be destroying with one hand what it was doing with the other, inasmuch as by compelling the company to directly introduce the gasoline, it would be exposing it to a sure economic failure, since this would have required the investment of a considerable sum of money for the construction of storage tanks. Due to the size of its business such an investment, as well as the introduction of large amounts of gasoline which it would have had to buy in order to justify the freight of tank ships to bring the product to Puerto Rico, would have proved impracticable for the company. If the principle laid down in *Alabama* v. *King & Boozer, supra,* were applied, we would have to disregard the legislative intent which is precisely to prevent that the economic burden of the tax should shift to the air transportation company which it sought to protect.

The Treasurer's contention, based mainly on the decision of *Alabama* v. *King & Boozer, supra,* to the effect that he lacked power to promulgate the regulation above referred to, lacks merit. In *Pyramid Products, Inc.* v. *Buscaglia, Treas.,* 64 P.R.R. 788, decided on April 19, 1945, we upheld the validity of a regulation—substantially the same as No. 44 revised—approved by the Treasurer under § 39 of the Income Tax Law of Puerto Rico (Act No. 85 of August 20, 1925, Sess. Laws, p. 584, as amended by Act No. 83 of May 6, 1931, Sess. Laws, p. 504) and under the Act of February

---

said corporation and the Powelson Air Line, today the Caribbean Atlantic Air Lines, Inc., have been carrying passengers, the former between San Juan, Ponce and Mayagüez, and vice versa, and the latter between San Juan and Ponce, and vice versa, and said lines can not go to other towns for lack of proper landing places."

12, 1904, Sess. Laws, p. 182, which established the procedure for the return of taxes paid upon the introduction of gasoline in Puerto Rico to be exported for Santo Domingo without being subjected to any transaction in this island.

For the foregoing reasons the decision rendered by the Tax Court shall be annulled and the case remanded for the rendition of another decision sustaining the complaint.