

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

May 26, 1966

Honorable Robert S. Calvert      Opinion No. C-694
Comptroller of Public Accounts
Capitol Station               Re:   Whether motor fuel pur-
Austin, Texas                      chased and used by the
                                       Texas Educational Founda-
                                       tion, Inc., on roads and
                                       highways of the Gary Job
                                       Corps Training Center and
                                       on highways of the State
                                       of Texas is exempt from
Dear Mr. Calvert:                     the State motor fuel tax.

By letter of April 15, 1966, you request an opinion of
this office on the following questions:

> "1. Will the use of motor fuel by the Texas
> Educational Foundation, Inc. on roads and high-
> ways of the Gary Job Corp Training Center -
> which are not closed to the public as a matter
> of right for vehicular travel - be subject to
> the State tax under the terms of the motor fuel
> tax law and the Federal Highway Aid Act, as
> amended by 4 United States Code Annotated 104
> (the Buck Act)?
>
> "2. Will the use of motor fuel in vehicles
> operated by the Texas Educational Foundation,
> Inc. on the highways of the State of Texas be
> exempt from the State motor fuel tax as an
> exclusive use of such motor fuel by the United
> States Government?"

The Job Corps program was created by the Economic
Opportunity Act of 1964, Public Law 88-452, August 20, 1964,
78 Stat. 508. A section of this act specifically authorizes
the Director of the Office of Economic Opportunity to:

> "(a) enter into agreements with any Federal,
> State, or local agency or private organization

-3339-

for the establishment and operation, in
rural and urban areas, of conservation
camps and training centers and for the
provisions of such facilities and ser-
vices as in his judgment are needed to
carry out the purposes of this part
. . . ." and to

"(b)  arrange for the provision of educa-
tion and vocational training of enrollees
in the Corps:  Provided, That, where
practicable, such programs may be provided
through local public educational agencies
or by private vocational educational
institutions or technical institutes where
such institutions or institutes can provide
substantially equivalent training with re-
duced Federal expenditures;

"(c)  . . . ."

Pursuant to the above authority, the office of Economic
Opportunity entered into a contract with the Texas Educational
Foundation, Inc., a Texas non-profit educational corporation,
for the operation of the Gary Job Corps Training Center at
Camp Gary, Texas, and the Texas Educational Foundation, Inc.,
hereinafter called the Contractor, is presently engaged
solely in the operation of such Job Corps Training Center,
The contract entered into between the above parties is of a
type similar to a cost-plus-a-fixed-fee contract, and provides
further that the Contractor is licensed to use the facilities
and all personal property belonging to the Government and
located on lands constituting the former Gary Army Air Force
Base.

A careful analysis of the contract reveals that the
contract requires the Contractor to provide educational and
vocational training for the enrollees of the training center,
and to provide for the support and the maintenance of such
training center during the term of the contract.  Paragraph 11
(B) of Exhibit B, attached to amd made a part of the contract
is a representative provision pertaining to supplies.

"B.  Logistical Support

In accordance with OEO policies, and
Contractor operational policies approved by

the Contracting Officer, the Contractor
shall requisition, receive, warehouse
and store, issue and account for and in
general manage the following areas:

1. Materials
2. Clothing
3. Supplies
4. Equipment
5. Facilities
6. Vehicles
7. Tools
8. Machinery
9. Other things as identified by OEO
   policies or directed by the Con-
   tracting Officer"

The Contractor uses Government property in the per-
formance of its duty, and the contract provides that the title
to such property shall remain in the Government, and further
provides that title to all property purchased by the Contractor,
for the cost of which the Contractor is entitled to be reim-
bursed as a direct item of cost under this contract, shall
pass to and vest in the Government upon delivery of such pro-
perty by the vendor.

In the performance of its duties, the Contractor pur-
chases motor fuel and the same is used in vehicles operating
both on and off the premises of the Gary Job Corps Training
Center. It is the tax levied and imposed by the provisions of
Article 9.02, Title 122A, Taxation-General, Vernon's Civil
Statutes, that prompts the first question in your opinion
request.

Section (1) of Article 9.02, supra, provides in part:

"There shall be and is hereby levied and imposed
(except as hereinafter provided) upon the first
sale, distribution, or use of motor fuel in this
State an excise tax of five cents (5¢) per gallon
or fractional part thereof so sold, distributed,
or used in this State. Every distributor who
makes a first sale or distribution of motor fuel
in this State for any purpose whatsoever shall,
at the time of such sale or distribution, collect
the said tax from the purchaser or recipient of
said motor fuel, in addition to his selling price,

and shall report and pay to the State of
Texas the taxes collected at the time and
in the manner as hereinafter provided. . . .
In each subsequent sale or distribution of
motor fuel upon which the tax of five cents
(5¢) per gallon has been collected, the said
tax shall be added to the selling price, so
that such tax is paid ultimately by the per-
son using or consuming said motor fuel for
the purpose of generating power for the
propulsion of any motor vehicle upon the
public highways of this State."

Article 9.01 (8), Title 122A, Taxation-General, Vernon's
Civil Statutes defines a public highway, in part, as follows:

"'Public highway' shall mean and include
every way or place of whatever nature
open to the use of the public as a matter
of right for the purpose of vehicular
travel . . . ."

From the facts stated in your opinion request as well
as the accompanying letter of the attorneys for the Contractor,
the motor fuel is purchased from a distributor and delivered
to the Texas Educational Foundation, Inc. on the Gary Job
Corps Training Center premises. Under the provisions of
Article 9.02, a "first sale" of such motor fuel has been made;
taxes thereon have accrued; and the distributor is obligated
to collect the taxes due thereon and pay the same to the State
of Texas, unless such sales were for the exclusive use of the
Federal Government, as provided for by the provisions of
Article 9.05, Title 122A, Taxation-General, Vernon's Civil
Statutes.

While it appears that the motor fuel is used by the
Contractor in carrying out a program of the Federal Govern-
ment, there is nothing in the contract that attempts to make
the Contractor an agent of the Federal Government in the
performance of its duties under the contract. No authority is
expressed in such contract designating the Contractor as its
purchasing agent; and no claim of exemption from taxes of any
kind is asserted therein. A most careful examination of the
contract in its entirety leaves us with but one conclusion,
and that is, the Texas Educational Foundation, Inc., is an
independent contractor and not an agent of the Federal Govern-
ment.

Would the use of motor fuel by the Texas Educational Foundation in the performance of its contract with the Federal Government be sufficient to exempt the motor fuel from taxation, upon the proposition that taxes imposed upon the Contractor, for which such Contractor was to be reimbursed, in effect, would be taxing the Federal Government? We think not. The leading cases on the question of taxing cost plus constractors are Alabama v. King & Boozer, 314 U.S. 1 (1941); and Curry v. United States, 314 U.S. 14 (1941), 140 A.L.R. 615, 621. These two cases have been followed by decisions too numerous to enumerate and most recently by the Supreme Court of the United States in United States v. Boyd, 378 U.S. 39 (1964).

In the Alabama v. King & Boozer case, supra, the Court said:

> "The asserted right of the one /government/ to be free of taxation by the other does not spell immunity from paying the added cost attributable to the taxation of those who furnish supplies to the government and who have been granted no tax immunity. So far as a different view has prevailed, see Panhandle Oil Co. v. Mississippi, and Graves v. Texas Co., supra, we think it no longer tenable."

Likewise, in Curry v. United States, supra, the Chief Justice said:

> "If the state law lays the tax upon them /cost plus contractors/ rather than the Individual with whom they enter into a cost plus contract like the present one, then it affects the Government, like the individual, only as the economic burden is shifted to it through operation of the contract. As pointed out in the opinion in the King & Boozer case, by concession of the Government and on authority, the Constitution, without implementation by congressional legislation, does not prohibit a tax upon Government contractors because its burden is passed on economically by the terms of the contract or otherwise as a part of the construction cost to the Government."

See also <u>James v. Dravo Contracting Co.</u>, 302 U.S. 134, (1937) 58 Sup. Ct. 208, 82 L.Ed. 155; <u>Federal Bank of St. Paul v. De Rochford</u>, 287 N.W. 522 (N.D. 1939); <u>Western Lithograph Co. v. State Board of Equalization</u>, 11 Cal.2d 156, 78 P.2d 731 (1938).

As heretofore stated the motor fuel is purchased from a distributor and delivered to the Texas Educational Foundation, Inc. at Camp Gary, and used by the Foundation in vehicles on roads within the reservation as well as on other public highways of the State of Texas. What is the effect, if any, of the use of such motor fuel in vehicles operating only within the Camp Gary reservation. A deed of cession covering the Gary Air Force Base (Camp Gary) was executed by the Governor of the State of Texas on September 23, 1954, and appears of record in Volume 1, page 30 of the Records of the Secretary of State of the State of Texas. The deed of cession reserves unto the State of Texas and other Texas local taxing authorities,

> "full power to collect in the area above described herein sales and use taxes applicable to purchases made therein and levied by the State against persons who are not exempted by Federal or State law from paying such taxes. The agents of the State and its local taxing authorities shall have full power to enter upon the said area for the purpose of effecting such tax collections to the same extent and to the same effect as though no cession had been made."

The same authority is granted by Chapter 4, Section 105 of the U. S. Code, and being a portion of what is commonly known and referred to as the "Buck Act", which provides, in part, as follows:

> "(a) No person shall be relieved from liability for payment of, collection of, or accounting for any sales or use tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and

such State or taxing authority shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

Under the clear provisions of the Motor Fuel Tax Act, taxes are due on sales of motor fuel to the Texas Educational Foundation, Inc. on gasoline used by the Foundation in vehicles operating upon the public highways of this State.

Under the authority of the Buck Act, taxes are due on gasoline purchased from a distributor located outside the area of Camp Gary but used by the Foundation in vehicles operating only within the confines of Camp Gary.

Based upon the above authority, and cases cited and discussed herein, we answer your first question "Yes", and your second question "No".

## S U M M A R Y

The Texas Educational Foundation, Inc. engaged in the operation of the Gary Job Corps Training Center, is not exempt from the payment of taxes imposed on the use of motor fuel by Article 9.02, Title 122A, Taxation-General, Vernon's Civil Statutes.

Yours very truly,

WAGGONER CARR
Attorney General

By Gordon C. Cass
Gordon C. Cass
Assistant

GCC/fb/cf

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman
Kerns B. Taylor
Arthur Sandlin
Harry Gee
Mario Obledo
APPROVED FOR THE ATTORNEY GENERAL
BY: T. B. Wright