# In re WEST PRODUCE CORPORATION.

## No. 202.

Circuit Court of Appeals, Second Circuit.

March 17, 1941.

Stone & Perlman, of New York City, for appellants.

Duberstein & Schwartz, of Brooklyn, N. Y. (Samuel C. Duberstein and Max Schwartz, both of Brooklyn, N. Y., on the brief), for the trustee.

Before SWAN, AUGUSTUS N. HAND and CHASE, Circuit Judges.

SWAN, Circuit Judge.

West Produce Corporation was engaged in the wholesale fruit and vegetable business until it closed its doors on December 27, 1937. It was adjudicated bankrupt in March, 1938. In the following November the trustee in bankruptcy initiated a turn-over proceeding against John C. Gale, president of the bankrupt, Julia Chimento, vice-president and secretary, and several other persons, charging them with having conspired to divert and conceal assets of the bankrupt estate. This eventually resulted in an order by the referee which the district court modified by its order of July 24, 1940. This is the order appealed from. It directs John C. Gale to turn over to the trustee fruit and vegetables, or their value in the sum of $4,079.47, and a Brockway truck, or its value (conceded to be $100); and it directs Julia Chimento to turn over the sum of $3,133.32, and a Buick sedan, or its value (conceded to be $150). From these provisions of the order Gale and Chimento have appealed. The order denied the trustee a turn-over order in respect to other items, and as to these items the trustee has cross-appealed.

The merchandise shortage which Gale was ordered to make good, was arrived at by taking the bankrupt's December 1st inventory figure of $1,735.98, adding the December purchases of $25,144.38, making a total of $26,880.36, and deducting the December sales of $22,800.89. If the sales were made at cost there should have been a merchandise inventory of $4,079.47 when business ceased on December 27, but no merchandise then remained in the store. If, however, the book figure of $22,800.89 truly reflected the actual receipts from December sales, the $4,079.47 represented loss on sales at less than cost rather than a diversion and concealment of merchandise. No attempt was made to offer direct evidence of diversion and concealment; the trustee relied upon the presumption created by section 21, sub. l of the Chandler Act as set forth in the margin.[1] The individual sales tickets recording the prices obtained for specific items of merchandise were not turned over to the trustee nor produced at the hearings;

---

[1] 11 U.S.C.A. § 44, sub. l. "In any proceeding under this title against a bankrupt for an accounting by him for his property or the disposition thereof, or to compel a turn-over of property by him, if his books, records, and accounts shall fail to disclose the cost to him of such property sold by him during any period under consideration, it shall be presumed, until the contrary shall appear, that such property was sold at a price not less than the cost thereof to him."

hence, it is urged by the trustee that the statutory presumption became applicable. The appellants, on the other hand, contend that regardless of the sales tickets the books accounted for each unit of merchandise. However that may be, the statutory presumption exists only "until the contrary shall appear." The referee's opinion contains the explicit statement: "From December 11, 1937 until December 24, 1937 merchandise was sold at a loss." Savaglio's testimony, if credited, supports such finding. Without the presumption, the finding of concealment of merchandise by Gale, individually or as president of the bankrupt, cannot be supported; and the referee's acceptance of the testimony as to sales below cost destroys the presumption. The trustee urges that the quoted statement of the referee merely sets forth the contention of the witness Savaglio, but we cannot read it as other than a finding by the referee. As to the diversion and concealment of merchandise, the order must be reversed. The trustee has not sustained his burden of proof.

■ As to the Brockway truck the evidence is also insufficient. The trucking department of the bankrupt's business was conducted in the name of J. C. Produce Co., which was a trade name used by Julia Chimento; but she knew nothing about the business and acted solely as her husband directed. We agree that the truck belonged to the bankrupt; but the issue is as to its possession or control. Savaglio testified that from the time when the bankrupt went out of business the truck had been in a named garage in Brooklyn. Of this there was no contradiction. We find nothing to indicate that Gale had or has either possession or control of the truck. Possession was in the garage man and unless he claims a possessory lien for services (as to which there is no suggestion in the testimony) control of the truck after the adjudication would appear to have been in the trustee himself rather than in the bankrupt's president.

■ The sum of $3,133.32 which Julia Chimento was ordered to turn over to the trustee is apparently made up of the following items: a check for $800 on December 20th and cash withdrawals charged to her on the bankrupt's books in the amount of $600 and $500 on the 21st, $333.32 on the 23rd, $400 and $500 on the 24th. The $800 check she endorsed to a life insurance company in repayment of its loan on a policy of which she was the beneficiary. The money she had borrowed on the policy had gone into the bankrupt's business. Obviously the $800 check was at worst a preferential payment to Chimento, but the trustee made no effort to prove it a voidable preference. She knew nothing of the condition of the business. As to this item the turn-over cannot stand.

■ The cash withdrawal of $333.32 presents a similar situation. In March 1937 Julia Chimento borrowed $1,000 from the National City Bank, the proceeds of the loan being deposited in the bankrupt's account and she being credited on the bankrupt's books. The bankrupt made monthly instalment repayments to the bank and in December, 1937, the balance remaining due was $333.32. This balance was paid in cash to the bank by the bankrupt's bookkeeper who entered the withdrawal as a cash payment to Mrs. Chimento. Payment to the bank was proved by record evidence. The money in question never even passed through Mrs. Chimento's hands and, in so far as she benefited, the payment was merely a preference. As to this item also the order was wrong.

■ The other four items of cash withdrawals were given to her by her husband and she testified that she paid them over to relatives or friends from whom she had previously borrowed like amounts which she had loaned to the bankrupt. Its books showed credit to her for the loans she claimed, but the names of the persons from whom she said she had obtained them were inserted above her own name and were thought to be fictitious entries. However, there was no challenge of the authenticity of the entries giving her credit for loans in the amount of the sums in suit. It cannot be denied that the business was living throughout the year 1937 on borrowed money or that during the year Mrs. Chimento advanced more than was repaid her. Whether the sums in suit were kept by her in repayment of her own loans or passed on to others from whom she had obtained the funds that went into the bankrupt's business is immaterial. As preferences the payments to her were not shown to be voidable. The turn-over order respecting these items cannot stand.

■■ The Buick sedan was purchased in the name of Julia Chimento in April, 1936, but the purchase price appears to have been paid by the bankrupt and it was carried on its books as an asset. She claims that it

was transferred to her in June, 1937, and points to an entry in the corporation's books indicating such a transfer with a corresponding reduction in her loan account; but the entry appears to have been a later insertion and is attacked by the trustee as fictitious. The district court's order recites that the evidence establishes that the Buick belongs to the bankrupt's estate and is in Mrs. Chimento's possession or control. Her appeal questions only the summary jurisdiction of the referee to adjudicate her adverse claim to ownership. Her answer to the trustee's petition made no objection to summary jurisdiction; the point was first raised in the brief filed on her behalf after the evidence was closed and the case submitted to the referee. An objection to summary jurisdiction must be timely. It comes too late if first made after the referee has issued his turn-over order. Page v. Arkansas Natural Gas Corp., 286 U.S. 269, 271, 52 S.Ct. 507, 76 L.Ed. 1096; In re Pinsky-Lapin & Co., 2 Cir., 98 F.2d 776, 777. We think it is also too late if first made at the time of submission for decision, after answer and a hearing on the merits. In re Realty Associates Securities Corp., 2 Cir., 98 F.2d 722, 725; In re Murray, 7 Cir., 92 F.2d 612, 615; First State Bank v. Fox, 8 Cir., 10 F.2d 116, 118. This portion of the order will be affirmed.

We pass now to the cross-appeal of the trustee. The referee ordered the respondents to deliver the bankrupt's journal for 1936-1937. The district court found the proof with reference to the journal insufficient. We agree. The testimony as to what happened to this book is vague. Whether it was in the package of books taken to Gale's house by the bankrupt's bookkeeper does not definitely appear. The trustee has failed to prove Gale's possession or control of the book.

The referee's order required Mrs. Chimento to turn over $5,843.32, which the district court reduced to $3,133.32. The difference of $2,710 is composed of $2,010 paid to J. C. Produce Co. between December 22nd and 24th and a payment to Fiero of $700. As already stated J. C. Produce Co. was a trade name under which the bankrupt's trucking business was conducted. Julia Chimento was the nominal proprietor of J. C. Produce Co. but Gale ran the business and the bankrupt provided the money. Deposits totaling $2,010 were made in the bank account of J. C. Produce Co. on the dates of the challenged payments. Later $1,500 from this account was transferred to young Patrick Chimento, who continued the fruit and vegetable business at the bankrupt's former address first, as he claimed, for himself, and later with two associates in the name of Zenith Fruit & Produce Co., Inc. Gale apparently worked for his son Patrick Chimento, and later for Zenith. Quite likely the bankrupt's $2,010 was fraudulently syphoned into the so-called new business of Patrick and Zenith but we think the district judge was right in refusing a turn-over order against Gale and Mrs. Chimento. The evidence is insufficient to show that they possessed or could control the sum of $2,010 or its proceeds when neither of them was an officer or stockholder of Zenith and the original transfer had occurred more than thirty months before. See In re Schoenberg, 2 Cir., 70 F.2d 321, 323.

The $700 item appears in the books as a cash payment to S. Fiero on December 10, 1937. It was explained by the bookkeeper as part of a check-kiting transaction. He received on December 9th a check from Fiero for $867.25 and claims to have given him $167.25 in cash on that date (although the books do not show it) and $700 the day following. The check turned out to be bad and subsequent entries indicate that Fiero repaid to the bankrupt $867.25 to make good his worthless check. There appear to be no changes on the page in which the Fiero entries were made and the check-kiting story is not wholly incredible. We cannot say that the district judge erred in accepting it, as he apparently did in excluding the item from the turn-over order. Certainly there could be no justification for holding Julia Chimento to account for the money, for there is no suggestion that she ever received it. An inference that Gale got the money would be highly speculative, even if the entry of payment to Fiero were thought to be fictitious. We think the judge was right in not charging either appellant with this sum.

The final item sought by the trustee is $464.65 entered as an "exchange—J. Chimento" on December 20th. Savaglio testified that he gave this sum to Gale for Mrs. Chimento. She testified that she got "about $450, something like that" and used it for the house. That she still had this money two and one-half years later is highly improbable. We find no error in excluding this item from the order.

It is true that the sale of merchandise below cost and the withdrawal of large sums of money in cash and checks so shortly before the bankrupt ceased business is most suspicious. We have little doubt that Gale was attempting to put these sums beyond the reach of the corporation's creditors in the event of the bankruptcy so clearly impending. But, as we have shown, such payments as were preferences were not proved to be voidable and such as were fraudulent transfers are no longer within the control of the appellees. Accordingly the order must be modified to exclude everything except the value of the Buick sedan. As so modified it is affirmed. No appellate costs are awarded to either party.