**In re READ–YORK, Inc.**

No. 25136.

District Court, E. D. Wisconsin.

Nov. 20, 1944.

Timothy Cronin, U. S. Atty., of Milwaukee, Wis., for U. S. Government.

David L. Phillips and Walter W. Hammond, both of Kenosha, Wis., for Alfred R. Davies, trustee.

Willard H. Putnam, of Industrial Commission, of Madison, Wis., for Industrial Commission of Wisconsin.

DUFFY, District Judge.

The trustee in bankruptcy has petitioned for confirmation in him of title to certain personal property. He also asks that the United States Government be restrained from interfering with his custody and possession of such property.

Under date of May 26, 1943, Read-York, Inc., secured a contract with the federal government for the manufacture of three gliders for the Army Air Force for the sum of $426,230. Funds for the performance of the contract were loaned and advanced by the federal government. One glider was manufactured but failed to meet the required tests, and the government thereafter terminated the contract. An appeal from the termination was denied by the Board of Contract Appeals on May 30, 1944. On the following June 29, Read-York, Inc., was adjudicated bankrupt. Its schedules admitted liabilities in excess of $700,000 with assets consisting entirely of personal property of a market value probably not in excess of $5,000.

The question before the court is whether title to the remaining assets is in the federal government by virtue of the May 26, 1943, contract as amended August 6, 1943. Neither the original contract nor the amendment was recorded or filed pursuant to Wisconsin statutes.

Supplemental Agreement No. 1, dated August 6, 1943, among other things provided:

"Article 44. Partial Payments. Partial payments, which are hereby defined as payments prior to delivery, on work in progress for the Government under this contract, may be made upon the following terms and conditions.

"(a) The Contracting Officer may, from time to time, authorize partial payments to the Contractor upon property acquired or produced by it for the performance of this contract: * * *

"(b) The title to all property upon which any partial payment is made prior to the completion of this contract shall vest in the Government in its then condition forthwith upon the making of any such partial payment or payments: * * *"

It is without dispute that the government made partial payments totaling $333,359.40

to Read-York, Inc., upon property acquired by the contractor, and the government claims title by virtue of said payments and the terms of the amendment to the contract hereinbefore quoted. Since the bankrupt ceased operating, the property has been and is now in the possession and custody of Army Air Corps representatives.

At the time of the oral argument as well as in its written brief the government has contended that as its claim is more than colorable and as it is in actual possession of the property in question, title to said property cannot be determined in a summary proceeding, and that the trustee must resort to a plenary suit. Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897. While it must be admitted that the claim of the government under a written contract is not merely colorable, yet the delay attendant upon a plenary suit would be unfortunate. The fundamental question to be here decided is a question of law. It is difficult to perceive how any evidence which might be produced upon the trial of the plenary suit could influence the decision of the law question. The terms of the written contract which is before the court and the manner in which the bankrupt operated are without dispute. If possible the court should endeavor to decide the question of law at this time.

■■■ The trustee initiated these proceedings by a petition. An order to show cause containing a temporary restraining order against the government was then issued. In response to said petition the government filed an affidavit and a motion which asked the court (1) to deny the petition of the trustee for confirmation of title in him as said trustee, and (2) that the temporary restraining order be dissolved. There was no special appearance by the federal government objecting to the jurisdiction of this court to proceed by summary proceedings. An objection to summary jurisdiction must be timely. In re West Produce Corporation, 2 Cir., 118 F. 2d 274, 277. Filing of a responsive pleading as was done here has been held a waiver of the right to have the issues tried in a plenary suit. Bagley v. Rowley, 6 Cir., 127 F.2d 139; Galbraith v. Vallely, 256 U.S. 46, 41 S.Ct. 415, 64 L.Ed. 823. I, therefore, conclude that under the circumstances of this case the court may properly determine at this time the issue of law here involved.

■■ Certainly no creditor other than the federal government could come into a bankruptcy court in this State and obtain for itself title to personal property by virtue of a contract not filed as required by Wisconsin law. In re Urban, 7 Cir., 136 F.2d 296. When the federal government enters into a contract with a private corporation, even in this time of war, are its rights and duties any different than if the contract were between private parties?

It is the long established policy of the State of Wisconsin, as is revealed by its statutes, such as Sec. 241.05, that where title to personal property has been supposedly passed by sale or otherwise and there has been a failure to transfer possession of such property, the presumption of fraud arises. Likewise Sec. 241.06. Wisconsin Statutes require all contracts of consignment to be filed and failure to do so results in the vesting of title in the consignee for his benefit or for the benefit of his creditors. Sec. 272.19, Wis.Stats., provides that personal property in Wisconsin shall be bound only from the time it is seized. In Burnett County Abstract Co. v. Eau Claire Citizens' Loan & Investment Co., 216 Wis. 35, 255 N.W. 890, the court held that an alleged conditional sale of an automobile not accompanied by delivery of possession was presumptively void as against a bona fide assignee of a subsequent conditional sales contract and a buyer thereunder. In the case at bar the personal property in question was kept in the space in the Simmons plant which was rented by Read-York, Inc., and such property had been used by Read-York, Inc., as its own.

The First War Powers Act of 1941, 50 U.S.C.A.Appendix § 601 et seq., was passed as a war measure to enable the government to enter into contracts for the full prosecution of the war promptly and without adhering to many statutory requirements such as advertising, accepting low bids, etc. The national emergency demanded that the federal government be in a position to act expeditiously. The legal title of the First War Powers Act is "An Act to expedite the prosecution of the war effort." 55 Stat. 838. By no provision in the War Powers Act did Congress grant an immunity to the federal government from complying with Wisconsin statute law requiring the filing of contracts purporting to transfer title to personal property while the possession of same remains unchanged, nor do the executive orders issued pursuant to

the War Powers Act contain any such provision, and no clause in the federal Constitution purports, unaided by Congressional enactment, to nullify any such State regulation. The case at bar does not present a situation where Congress in the aid of its power to raise and support armies, Art. I, Sec. 8, Cl. 12, or under the supremacy clause, Art. VI, Cl. 2, has declared State statutes inapplicable to defense contracts.

The United States Supreme Court in Penn Dairies v. Milk Control Commission, 318 U.S. 261, 275, 63 S.Ct. 617, 623, 87 L.Ed. 748, stated: " * * * An unexpressed purpose of Congress to set aside statutes of the states regulating their internal affairs is not lightly to be inferred and ought not to be implied where the legislative command, read in the light of its history, remains ambiguous. Considerations which lead us not to favor repeal of statutes by implication, United States v. Borden, 308 U.S. 188, 198, 199, 60 S.Ct. 182, 188, 84 L.Ed. 181; United States v. Jackson, 302 U.S. 628, 631, 58 S.Ct. 390, 392, 82 L.Ed. 488; Posadas v. National City Bank, 296 U.S. 497, 503-505, 56 S. Ct. 349, 352, 353, 80 L.Ed. 351, should be at least as persuasive when the question is one of the nullification of state power by Congressional legislation."

The government argues that military secrecy required that the contract in question should not be subject to public scrutiny. But the original contract contained no provision regarding the title of the property being in the federal government. Of course filing such a contract was not a necessity. However, more than two months after the date of the original contract came the amendment designated a "supplemental agreement" and containing the language hereinbefore quoted. This provision pertaining to title of the personal property apparently was an afterthought on the part of someone since it was clearly inconsistent with various provisions of the original contract. In any event, it is not perceived why at least a portion of the contract pertaining to title of the personal property could not have been filed and thereby give notice to creditors that the contractor with whom they were dealing was not the owner of the property.

The government however leans heavily upon the case of United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209, contending it is on "all fours" with the case at bar. Undeniably there is some similarity. In the Allegheny case Mesta Machinery Company, a Pennsylvania corporation, was engaged in the manufacture of heavy machinery at its plant in the County of Allegheny. In 1940 the War Department desired to produce a quantity of large field guns. Mesta's plant was not equipped for the manufacture of such ordnance. Mesta and the government agreed that certain added equipment should be furnished at government cost and should remain the property of the United States. Mesta manufactured one machine and the government furnished ten others, but the large proportion of the machinery was purchased by Mesta from other tool manufacturers. This machinery was inspected and accepted upon behalf of the United States which thereupon compensated Mesta in accordance with the agreement. The contract provided that title to all such property should vest in the government upon delivery at the site of the work and upon inspection and acceptance. After this was done the machinery was bolted on concrete foundations in Mesta's plant on real property owned by it. After the installation of the machinery, Allegheny County revised Mesta's previously determined assessment for ad valorem taxes. The assessor added onto the value of the real estate a sum equivalent to the value of the machinery in question. The Supreme Court held that title to the property in question was in the United States, and that the attempt of Allegheny County to levy an assessment thereon was a violation of the United States Constitution.

Some of the language used in the court's opinion in the Allegheny case favors the contention of the government herein. However, I do not think the Allegheny decision is controlling. No sale to the government of personal property acquired by the contractor, as in the Allegheny case, is involved in the case at bar. Furthermore, the critical issue in the Allegheny case was whether the county was taxing personal property of the government under the guise of levying an ad valorem real estate tax. Also, the case at bar presents a question of title not between the original parties to the agreement but rather between one of those parties and subsequent creditors of the other. The intervening rights and creditor interests in the case at bar distinguish it from the Allegheny case. Moreover, in that case there was not,

as here, a clean cut issue between the application of State law as provided for in the Bankruptcy Act and an undeclared Congressional policy as contended for herein by the government.

The government contends that federal law is controlling; but the trustee's title is predicated on federal law, namely the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. The trustee is in the most favored creditor's position. The government will have full opportunity to file its claims and obtain an adjudication as to their rank and priority.

Although I have chosen to rest the decision of this case upon the grounds hereinbefore stated, I also believe that the contract with its amendments must be construed as a whole, and that, ascertaining the intent of the parties from the entire contract, title to all the personal property purchased by the contractor and upon which partial payments had been made did not ipso facto vest in the federal government, even after the amendment of August 6. I believe title would vest only after some affirmative action and constructive delivery of the property to the government, such as its being turned over to a designated transportation agency. The government argues that it was its money which purchased the property in question and therefore it deserves first consideration. While the government did furnish Read-York, Inc., with practically all of the money with which it started and operated its business, nevertheless such was advanced in the form of loans and Read-York, Inc., was required to pay 2½% interest on the unliquidated balance of advanced payments.

An order may be entered granting the request of the trustee in bankruptcy and denying the motion of the United States Government.