# Berks County v. Penn Ohio Steel Corporation

*James W. Bertolet*, county solicitor, for plaintiff.

*Marx & Marx*, for defendant.

SHANAMAN, J., March 3, 1952.—

### Findings of Fact

1. Plaintiff is Berks County, a political subdivision of the Commonwealth of Pennsylvania.

2. Defendant is Penn Ohio Steel Corporation, a business corporation having its principal office and place of business in the Borough of Birdsboro, Berks County, Pa.

3. The Board of County Commissioners of Berks County, at a meeting held on March 8, 1949, levied and assessed county and institution district taxes in the sum of $487.50 on and against the leasehold interest of defendant in the United States Navy plant, situate in the Borough of Birdsboro, Berks County, Pa., for the year 1949; said tax was based upon a valuation of the leasehold interest of $75,000, regularly and properly assessed and no appeal was taken to the Court of Common Pleas of Berks County, Pa., from the assessment inasmuch as the amount of $75,000 is not in dispute.

4. The Board of County Commissioners of Berks County, at a meeting held on March 9, 1950, levied and assessed county and institution district taxes in the sum of $487.50, on and against the leasehold interest of defendant in the United States Navy plant, situate in the Borough of Birdsboro, Berks County, Pa., for the year 1950; said tax was based upon a like valuation of the leasehold interest of $75,000 unappealed from.

5. Defendant was the owner of a leasehold interest in the United States Navy plant, located in the Borough of Birdsboro, Berks County, Pa., at the time the aforesaid taxes were levied and assessed against the leasehold interest in the amounts above mentioned. The assessments were fair and equitable (by stipulation).

6. Though the amount of the assessments is not challenged as excessive or inequitable, defendant has refused to pay the aforementioned taxes or any part thereof, although repeated demands have been made for the payment thereof by plaintiff and the tax collector of the Borough of Birdsboro, Berks County, Pa.

7. The amounts of taxes claimed, together with interest and penalties thereon, are true and correct and are stipulated by the parties to be owed by defendant, in the event that the court adjudicates and determines that the aforementioned leasehold interest of defendant is taxable as real estate under the laws of the Commonwealth of Pennsylvania.

8. Defendant occupies and uses the real estate and machinery owned by the United States Navy Department, a Federal agency, and this use and occupancy, as particularly regulated by the hereinafter-mentioned letter of intent, constitute the leasehold interest of defendant in property which is the subject of the present tax litigation; letter of intent directed to defendant was accepted by defendant; subsequent to the ac-

ceptance no formal lease has been tendered to defendant by the United States Navy Department.

9. The leasehold interest exists under and by virtue of a letter of intent dated June 29, 1948, from an authorized official of the Bureau of Yards and Docks of the United States Navy to Penn-Ohio Steel Corporation, given in lieu of a written lease, and amounting in effect to a lease of "the entire Naval Industrial Reserve Plant, Birdsboro, Pennsylvania and all land" and so forth "together with certain items of personal property" and so forth, "comprising land, buildings, improvements, appurtenances and personal property . . . hereinafter referred to as the Plant and Facilities" to Penn-Ohio Steel Corporation, for a period of five years from the date of acceptance of the letter of intent, to wit, from June 30, 1948, for a cash rental of $126,600 per annum, payable monthly. See exhibit A of defendant's answer, stipulated to be a true and correct copy. The agreement (letter of intent) also provides that if the Congress of the United States of America should subsequently subject property of the United States of America to the taxation of State or local authorities "(as opposed to Penn-Ohio's leasehold interest therein)", Penn-Ohio shall pay taxes and shall by such payment become entitled to an equitable reduction of the annual rental.

10. The amount in question, consisting of taxes, penalties and interest, is as follows: 1949 county taxes, $487.50; penalty of 5 percent, $24.37; interest from May 1, 1950, to March 3, 1952, $53.79; total $565.66; 1950 county taxes, $487.50; penalty of 5 percent, $24.37; interest from May 1, 1951, to March 3, 1952, $24.54; total $536.41.

### Discussion

In Birdsboro, Berks County, Pa., the National Government owns a large manufacturing plant which

comprises land, buildings, machinery and necessary equipment and some personal property considered as part of the plant. In effect the National Government has leased the plant, whole and entire, to defendant for five years for a cash rental payable monthly. Berks County has proceeded to levy and assess for the years 1949 and 1950 county and institutional taxes on the leasehold interest of defendant in the plant. For the purpose of such taxation the county assessed defendant's leasehold interest in the plant at $75,000 and levied upon it the combined county and institutional district rate of six and one-half mills, thus producing a tax claim in the amount of $487.50 for each of the two years. The tax has not been paid, and Berks County has sued defendant in assumpsit to recover it. In obedience to a stipulation by the parties the case was tried by a judge without a jury. The dollar amounts of the assessment and of the tax claims are not disputed or challenged as incorrect. Although the agreement between the United States of America and defendant mentions personalty (Finding of Fact 9) the case has been argued without reference to that fact, and we shall accordingly disregard it as not deemed a significant factor by the parties or their counsel. The complaint avers that the tax in each year was levied on "real estate of the defendant, viz., a leasehold interest owned by the defendant in the United States Navy Plant, situate in the Borough of Birdsboro, Berks County, Pennsylvania, . . . pursuant to the acts of assembly in such case made and approved". Defendant's answer denies that defendant owns real estate in Birdsboro and denies that any act of assembly authorizes the assessment and taxation of its interest in the Navy plant. The parties also stipulated that the question of law involved is "whether the defendant's leasehold interest in the United States Navy Plant at Birdsboro is taxable as real estate by the plaintiff under the

laws of the Commonwealth of Pennsylvania". A municipal or State tax upon a leasehold, subordinate to a title in fee simple owned by the United States, may be valid, if not harmful to the United States of America as an infringement upon its title: Forbes v. Gracey, 94 U. S. 762; Garland Co. v. Gaines (Ark. Sup. Ct., 1892) 19 S. W. 602. Nor is there any doubt that the State, under its wide and searching power as sovereign to tax lands, factory buildings and necessary machinery and equipment within its territorial dominion, can subject a leasehold thereof to taxation: LaSalle County Mfg. Co. v. The City of Ottawa, 16 Ill. 418, 420 (1855). In Trimble v. City of Seattle, 231 U. S. 683, 689-690, the court said:

"Whether landlord or tenant shall pay a tax is a matter of private arrangement, and the practice one way or the other has no bearing on the matter. The argument from inequality really works the other way. If these leaseholds are not taxable, they are a favored class of property; for ordinarily leaseholds are taxed even if they are lumped and included in the value of the fee. When an interest in land, whether freehold or for years is severed from the public domain and put into private hands, the natural implication is that it goes there with the ordinary incidents of private property and therefore is subject to being taxed."

State ex rel. Sioux County v. Tucker, 56 N. W. 718 (Neb. Sup. Court, 1893), accord. Similar doctrine was expressed by Woodward, J., in Luzerne County v. Galland Bros. & Co., 13 Luz. L. R. 18, 19-20, as follows:

"The protection which the government and the laws afford to citizens engaged in any lawful calling, is extended to the person and the property of a lessee as well as of the owner of the soil. And therefore it would seem, that the machinery should be taxed without reference to the nature of the title by which the

premises upon which it is erected, are held. Clearly, any other construction of the law would open a wide door to fraud, and prove a constant temptation for subterfuge and false dealing; at the same time, that it would relieve certain classes of manufacturers from their fair share of the burden of taxation."

In Moeller v. Gormley, 44 Wash. 465, 87 Pac. 507 (1906) a leasehold was assessed as real estate. In Hammond Lumber Co. v. Los Angeles County, 104 Cal. App. 235, 285 Pac. 896 (1930), the court upheld taxation of the leasehold but as personalty. The court said, page 239:

"When land held in private ownership is leased, both the leasehold and the reversionary interest are ordinarily assessed together to the owner, the value of the lessee's estate being treated as a constituent of the valuation of the larger interest belonging to the owner of the freehold. Instead of splitting the interests, it operates fairly as a rule to make a single assessment against the lessor as the beneficial owner not only of the freehold, but also of all lesser estates, and the incidence of the tax then becomes a matter of agreement between the lessor and the lessee. Usually in the case of short leases the lessor pays the entire tax, and with such charge in view he fixes his rent accordingly. . . . When, however, there is a lease of land owned by the state or a municipality, the reversion being exempt from taxation, the usufructuary interest alone is subject to tax in proportion to its value; and in the absence of agreement to the contrary, the tax necessarily falls upon the lessee."

See, however, Montgomery v. Town of Branford, 107 Conn. 697, 142 Atl. 574 (1928), contra.

Plaintiff bases its authority for the taxation of defendant's leasehold interest on the provisions of the Act of May 21, 1943, P. L. 571, sec. 201, 72 PS §5453.201, which is commonly referred to as The

Fourth to Eighth Class County Assessment Law. That section reads as follows:

"The following subjects and property shall as hereinafter provided be valued and assessed and subject to taxation for all county, borough, town, township, school, (except in cities), poor and county institution district purposes, at the annual rate,

(a) All real estate, to wit: Houses, buildings, lands, lots of ground and ground rents, mills and manufactories of all kinds, and all other real estate not exempt by law from taxation."

The Navy plant falls within the express language "houses, buildings, lands, lots of ground . . . mills and manufactories of all kinds . . ." The statute does not specify or concern itself with the amount of interest or character of estate, held by the taxpayer, to whom the real estate is assessed and if the tax presently sought to be imposed is invalid, the lessee escapes taxation upon his interest in the realty. The question arises, however, whether such an interest in real estate as amounts only to a right to possess and use it under a lease for five years, is a taxable estate in realty. The alleged novelty of taxing such an interest as real estate, does not disprove the existence of the power so to do. A uniform practice may stem from the inconvenience of separating interests for purposes of taxation, but as stated in the passage quoted from Trimble v. Seattle, supra, ". . . the practice one way or the other has no bearing on the matter". The tax assessor is ordinarily not concerned with the condition of the title to real estate, as affected by contracts between the owner and third persons, and he can most conveniently assess the whole to the registered owner. When, as in the present case, the assessor finds it futile to do so, because of the exemption of the owner of the fee from said taxation, the only question is as to whether the statute permits an assessment of the temporary interest of the

tenant. It must be granted that cases like Bemis v. Shipe, 26 Pa. Superior Ct. 42; Sanderson v. City of Scranton, 105 Pa. 469; Railroad Company v. Sanderson, 109 Pa. 583, and Baird's Appeal, 132 Pa. Superior Ct. 573 (affirmed in 334 Pa. 410), do not support the assessment presently in question, because in all those cases, the tenant (or in Baird's Appeal, the landlord) was the absolute owner of the thing assessed. In fact the Supreme Court in supporting the assessment in the Sanderson cases, just above cited, carefully explained that the lease in those cases was more than a lease and amounted to a sale to the lessee of the coal in place. From the dicussion at pages 589 and 590 of Delaware, Lackawanna and Western Railroad Company v. Sanderson, 109 Pa. 583, it may be fairly concluded that if a bare relation of landlord and tenant, with a contemplated reversion at the end of the term, had existed, the Supreme Court would have held the assessment to be invalid. Berks County, however, relies on two more recent cases, namely, Pennsylvania Stave Co's Appeal, 236 Pa. 97, and County of Franklin v. McClean, 93 Pa. Superior Ct. 165. In those cases also, as in the Pennsylvania cases above cited, the tenant had improved the leased ground by building thereon, and owned the thing assessed. Therefore, the present defendant would likewise distinguish these two later cases for the same reason. However, the language of the opinions in these two latter cases suggests a definite departure from the reasoning in the Sanderson cases, and would logically support the assessment made by Berks County in the present case.

In Pennsylvania Stave Company's Appeal, 236 Pa. 97, the stave company had leased 26 acres for a term of years, and had built a saw mill and numerous other buildings on the leased ground. The land and the buildings were separately assessed to the tenant as real estate. The court said:

"The stave company under its contract with the lumber company *has an estate for a term of years in the twenty-six acres of land, and this estate together with the permanent improvements thereon is a proper subject of taxation under the Act of April 15, 1834,* P. L. 509, which act as amended by the Act of April 29, 1844, P. L. 486, 497, provides for the taxation as real estate of 'houses, lands, lots of ground, and ground rents, mills manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan yards, fisheries and ferries, wharves', and other like property." Id., 101. (Italics supplied.)

The language of the present act of assembly, under which Berks County has assessed defendant's leasehold does not depart materially from the language of the statute under consideration in the Pennsylvania Stave Company's Appeal.

"There is no suggestion that the taxation of houses, mills and factories is made to depend upon the kind or character of the estate the owner may have in the land upon which the buildings are located. The taxing statutes look to the nature of the structure, whether it be permanent or not, rather than to the technical legal disinctions as to what constitutes real estate." Id., 101.

"The property involved in this proceeding comes within the express provisions of these statutes, and it would be sticking in the bark to hold that this valuable estate should be exempt from taxation because the stave company was not the owner of the fee in the land demised to it for a term of years. In this connection it should not be overlooked that the stave company is the owner of the sawmill, houses, sheds, shops and barn, with the right to remove the same at the expiration of the term, and that during the occupancy of the land, it has an estate in the demised premises.

In no proper legal sense can the buildings in question here be considered trade fixtures, nor can they be treated as personal property under our taxing statutes." Id., 102.

Counsel for defendant lays stress on the court's mention in the above quotation that the stave company was the owner of the permanent improvements. This contention does not appear to give sufficient weight to the language of the court in the same sentence, namely, that "during the occupancy of the land" the tenant "has an estate in the demised premises".

In the County of Franklin v. McClean, 93 Pa. Superior Ct. 165, above cited, the State of Pennsylvania (Forestry Department) had leased to McClean a lot of ground, on which he then erected a house and other permanent improvements. Franklin County assessed the property as real estate. The court said:

"But it by no means follows that the estate which appellant has in that land and the house which he has erected thereon are not subject to taxation. The property assessed for taxation is a house situated upon leased land. . . . *Appellant has an estate in the land which is distinct from the title of the State and this, with the house erected thereon, is subject to taxation.* We regard the fact that appellant's estate is held under the State as lessee, rather than under an individual, as immaterial." Id. 171.

"It would be sticking in the bark to hold that while *an estate for a term of years in land, with a house erected thereon,* is a proper subject of taxation when the lessor is an individual, a similar estate held on a lease from the State is exempted from taxation." Id. 172.

"The State's sovereignty in the forest reserve lands so guards them that its title thereto cannot be divested by a tax sale by the local tax gatherer. But in our view that sovereignty does not prohibit the taxation of an

estate of a lessee in a part thereof, which falls within the express provisions of the Acts of 1834 and 1844." Id. 172. (Italics supplied.)

It is thus expressly stated in both the cited cases that a lease of land for a limited term creates an estate in the land and that such estate is taxable at a fair appraisement to the tenant and holder of it. The permanent improvements on the leased land, possessing the character of real estate, stand under the same principle. By the reasoning on which the decisions were arrived at in the two above-cited cases, the fact that the houses in these cases were erected by the tenant after the execution of the lease and were owned by the tenant was unnecessary to those decisions. The discussion in the Sanderson cases, herein above referred to, if not obsolete, is inapplicable to the present situation.

The Act of May 22, 1933, P. L. 853, section 407, 72 PS §5020-407, provides for furnishing to assessors of a statement of the names of owners according to the records in the office of recorder of deeds, and imposes upon assessors the duty "to assess the same in the name of the then owner or owners, as thus appears in such statement." But, as stated in DeSimone v. McCray, etc., 44 D. & C. 600, 603:

"The purpose of this act is to provide for orderly procedure and accuracy in the assessment but the act does not provide that assessments made contrary to its provision are void and of no effect."

The true intent of the system of laws for taxation of real estate is to visit all the subjected interests impartially with the burden of the levy. The interest of a tenant is normally reached along with that of the lessor by the highly convenient method of assessing the registered owner, who in the amount of the rent exacted takes account of his liability to pay the whole

tax. When, through the existence of a special circumstance, an unexempted interest would otherwise escape taxation through the exemption of the lessor from taxation, the assessor may catch the true owner of such leasehold interest where he can, by assessing to him the value of his interest as tenant.

In Mesta Machine Company Case, 347 Pa. 191, the Mesta Machine Company owned the land and was taxed for machinery which it had leased from the United States of America, and had then installed upon its land. The court said, at page 198:

". . . ; though the actual owner who is not the record owner may also be assessed, if, of course, not exempt for some reason from taxation. [cases]".

The Mesta case was reversed in the Supreme Court of the United States in United States et al. v. Allegheny County, Pa., 322 U. S. 174, 64 S. Ct. 908, 88 L. Ed. 1209. However, the Supreme Court of the United States in the later case of S. R. A., Inc., v. Minnesota, 327 U. S. 558, 90 L. Ed. 851, said at page 561.

"The supremacy of the Federal Government in our Union forbids the acknowledgment of the power of any state to tax property of the United States against its will. . . . This postulate, as a matter of federal law, forces final decision of the validity of claimed exemptions under this immunity upon this Court. United States v. Allegheny County, supra, 183, and cases cited. The impact of state taxation on federal operations may be so close and threatening as to compel judicial intervention to declare the state tax invalid, as in the M'Culloch Case, or so remote and incidental as to justify a federal court in refusing to relieve a taxpayer from a state tax. Alabama v. King & Boozer, 314 U. S. 1. The line of taxability is somewhat irregular and has varied through the years."

The court further said:

"Minnesota took care to leave unassessed whatever interest the United States holds. . . . Although Minnesota real estate taxes are assessed on the parcel of land as a 'unitary item' including 'all rights and privileges,' the state does not claim that a tax sale will divest the fee title of the United States. [Case] Apparently the state is of the view that the equitable interest alone may be sold under its laws, leaving the fee of the United States in its position of priority over any interests which may be transferred by the tax sale. [Case] Such a construction of the state law is binding upon this Court. It does not impinge upon federal rights. So long as that situation exists, the determination of the state cannot be challenged here. The possibility of repossession by the United States is not enough to block a tax sale in which the paramount rights of the United States are protected. [Case]." Id. 565-566.

Similarly, in the present case, the State through its subordinate unit, the county, has assessed and levied upon only the subordinate interest of the tenant, to wit, the leasehold.

Nor can it be contended that the National Government is disadvantaged in a business way, with reference to a possible salability of the plant. The same argument was met and disposed of by the Supreme Court in the same case, S. R. A. v. Minnesota, saying:

"Our recent cases have disposed of this economic argument in a way which is contrary to petitioner's contention." Id. 570.

"The Government, rightly, we think, disclaims any contention that the Constitution, unaided by congressional legislation, prohibits a tax exacted from the contractors merely because it is passed on economically, by the terms of the contract or otherwise, as a part of the construction cost to the Government": Alabama

v. King & Boozer, 314 U. S. 1, 86 L. Ed. 3, 6, 62 S. Ct. 43.

Furthermore, in the present case, the National Government has contemplated the possibility of State tax upon the leasehold, and has expressly excluded it from an express provision in the letter of intent with regard to any State tax that might attempt to tax the property of the United States of America. See finding of fact 9. The decision in the Supreme Court of the United States in the case of United States v. Allegheny County, above cited, reversing the Mesta decision of the Pennsylvania Supreme Court, is also distinguishable upon the facts. Mesta was not a ground-tenant or lessee under the United States, but had simply been supplied by the United States with some heavy tools, which it needed and utilized upon its own premises.

"Furthermore, the critical issue in the Allegheny case was whether the county was taxing personal property of the government under the guise of levying an ad valorem real estate tax." In re Read-York, Inc., 60 F. Supp. 951, 953 (Dist. Ct., E. D. Wisc).

The escape of present defendant from the tax imposed for county and institutional purposes would not only involve a discrimination against other manufacturers and other taxpayers generally, but would open an avenue for the progressive diminution of county revenues. The law and applicable decisions do not require such a result. The tax is valid. Section 7 of the stipulation by counsel authorizes the entry of judgment. The court in accordance with section 7 makes the following conclusion of law.

### Conclusion of Law

1. Defendant's leasehold interest in the United States Navy plant at Birdsboro is taxable as real estate by plaintiff under the laws of the Commonwealth of Pennsylvania.

And now, to wit, March 3, 1952, the court enters judgment for plaintiff for $1,102.07.

OPINION SUR EXCEPTIONS

SHANAMAN, J., June 25, 1952.—Plaintiff sued defendant in assumpsit to collect taxes, and the parties stipulated that the judge try the case without a jury. After hearing and argument, the trial judge entered judgment for plaintiff for $1,102.07. Defendant excepted to the judgment and to the court's conclusion of law that defendant's leasehold interest in the United States Navy plant at Birdsboro, Pa., was taxable as real estate by plaintiff under the laws of the Commonwealth of Pennsylvania. The cause was then argued before the full court. The general argument of defendant, presented formerly to the trial judge and now to the court en banc, is based on the familiar common-law distinction between real and personal property. A lease of real estate for a fixed term had at common law and still possesses many of the attributes of personal property and is, therefore, denominated a chattel real. Nevertheless, within the meaning of the particular tax statute of some States a lease of land for a fixed term may be regarded for purposes of taxation as real estate. It is not necessary to repeat the citation of authorities upon this point from the opinion of the trial judge. The case of Pennsylvania Stave Company's Appeal, 236 Pa. 97, declared that a lease of real estate for a fixed term was to be regarded as real estate subject to taxation.

"The stave company under its contract with the lumber company has an estate for a term of years in the twenty-six acres of land, and this estate . . . is a proper subject of taxation under the Act of April 15, 1834, P. L. 509 . . ." Id., 101.

Present defendant endeavors to distinguish the Act of 1834 from the Act of 1943, under which plaintiff

has imposed the tax in the present suit. The Act of 1834 provides for the taxation as real estate of "houses, lands, . . . mills, and manufactories of all descriptions . . ." and other like property. The Act of May 21, 1943, P. L. 571, sec. 201, 72 PS §5453.201, which is commonly referred to as "the Fourth to Eighth Class County Assessment Law" is differently worded from the Act of 1834, and states that, "All real estate, to wit: Houses, buildings, lands . . . mills and manufactories of all kinds, and all other real estate . . ." shall be taxed.

Under the Act of 1834 the court may sometimes have to decide whether a given piece of property is "like" the things specifically mentioned as taxable in the act. Under the Act of 1943, on the other hand, the court may sometimes have to decide whether the subject of taxation is "real estate". We do not think this difference is one of basic intent or effect, nor that it prevents the application to the present problem of the cited case decided under the older act of assembly. The remaining contentions of defendant have been sufficiently discussed in the opinion of the trial judge.

And now, to wit, June 25, 1952, defendant's exceptions are overruled.