**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Earl KABEISEMAN, Director of Revenue, State of Wyoming; Wyoming Department of Revenue and Taxation; State of Wyoming, Defendants–Appellees.**

**No. 91–8032.**

United States Court of Appeals,
Tenth Circuit.

July 21, 1992.

John J. McCarthy, Atty., Tax Div. (Shirley D. Peterson, Asst. Atty. Gen., and Gary R. Allen, David English Carmack, and David M. Katinsky, Attys., Tax Div., Dept.

---

of Justice, Washington, D.C., with him on the brief, Richard Allen Stacy, U.S. Atty., of counsel), Cheyenne, Wyo., for plaintiff-appellant.

Matthew D.C.P. Meuli, Asst. Atty. Gen. (Vicci M. Colgan, Sr. Asst. Atty. Gen., with him on the brief), Cheyenne, Wyo., for defendants-appellees.

Before EBEL, Circuit Judge,
McWILLIAMS, Senior Circuit Judge, and HUNTER, Senior District Judge.*

McWILLIAMS, Senior Circuit Judge.

This case has its roots in *McCulloch v. Maryland*, 17 U.S. (4 Wheaton) 316, 4 L.Ed. 579 (1819). In *McCulloch*, the Supreme Court held that under the Supremacy Clause of the United States Constitution, Article VI, clause 2, a law passed by the state legislature of Maryland imposing a tax on a branch of the Bank of the United States located in Maryland was "unconstitutional and void." In so doing, Chief Justice Marshall observed that "the power to tax involves the power to destroy." *Id.* at 431.

In the instant case, we are concerned with the effort of the State of Wyoming to impose on a private contractor, under contract with the United States to operate a federally owned facility located in Wyoming, a sales tax on diesel fuel and a license tax on gasoline used by the private contractor in the performance of its contract with the United States.

The United States brought the present action in the United States District Court for the District of Wyoming against Earl Kabeiseman, Director of Revenue for the State of Wyoming, the Wyoming Department of Revenue, and the State of Wyoming. By amended complaint, the United States challenged the imposition and collection of a sales tax on diesel fuel and a license tax on gasoline from a private contractor under a personal service contract with the United States.[1] The United States sought a declaration that the collection of

such taxes violated the Supremacy Clause and asked for a refund of such taxes theretofore collected and an injunction prohibiting future collection of such taxes. By answer, the defendants asked that the United States be denied any relief.

Thereafter, both the United States and the defendants, who will hereinafter be referred to as Wyoming, filed cross-motions for summary judgment. As we understand it, the parties were unable to agree on any stipulation of facts. The summary judgment motions, however, were supported by numerous affidavits. In any event, the motions for summary judgment were heard, and the district court denied the motion of the United States and granted the motion of Wyoming. A motion of the United States to reconsider was denied and final judgment in favor of Wyoming was duly entered.

As indicated, the parties did not formally stipulate to the facts, although numerous affidavits did indicate that there was no real disagreement over the critical background facts. The district court in its order granting Wyoming's motion for summary judgment summarized the background facts out of which the present controversy arises and neither party, on appeal, takes any particular exception to the district court's summarization. Accordingly, we set forth here the district court's recital of the background facts, which reads as follows:

NPR–3, a 9,481–acre federal facility located in Natrona County, Wyoming, some 35 miles north of Casper, is one of three naval petroleum reserves in the country currently administered by the Department of Energy (DOE), formerly the Atomic Energy Commission (AEC). The other two, designated NPR–1 and NPR–2, are located in California in Kern County and Buena Vista Hills, respectively. All are engaged in the production of crude oil and natural gas. On October

---

* Honorable Elmo B. Hunter, Senior District Judge, for the District of Missouri, sitting by designation.

1. The contract between the United States and the private contractor provided that any state

sales tax or license tax imposed on, and collected from, the private contractor were costs of the contract to be paid by the United States.

23, 1981, DOE contracted with Lawrence–Allison & Associates West, Inc. (LAAW), a private contracting company, for the operation and maintenance of NPR–3. This contract was renewed for five years in September 1986.

In order to operate NPR–3, refined petroleum products, including gasoline and diesel fuel, are needed for drill rigs, motor vehicles, and for fracturing of wells. The Defense Fuel Supply Center (DFSC), located within an agency of the Department of Defense, purchases gasoline and fuel oil for federal agencies. Each year, LAAW submits to DFSC an estimate of the amount of various petroleum products it will need to operate NPR–3 for the year. Potential vendors are then approached by DFSC. Most of the petroleum products needed to operate NPR–3 are purchased by DFSC. In the event LAAW's estimate is short, LAAW contracts directly with the vendor. The taxes paid on these latter purchases are not contested by the Government.

LAAW accepts delivery of all the petroleum products, with title passing directly from the vendor to DOE. The fuel is pumped directly into Government-owned storage tanks. LAAW withdraws the fuel as needed in the course of managing and operating NPR–3. LAAW issues checks bearing its own name but drawn against funds deposited by DOE in a special checking account. The bank accumulates these checks daily and electronically notifies the United States Treasury. Soon thereafter, the bank credits DOE's account.

We are here concerned with the efforts of Wyoming to impose and collect from Lawrence–Allison & Associates West, Inc. (LAAW) a sales tax on diesel fuel and a license tax on gasoline used by LAAW in its performance under its contract with the United States whereby LAAW operates and maintains Naval Petroleum Reserve–3 (NPR–3) in Natrona County, Wyoming. In its motion for summary judgment, the

United States contended that both the sales tax and the license tax collected by Wyoming were, in actual effect, an unconstitutional levy upon the United States. The basic position of Wyoming in its motion for summary judgment was that, as concerns both the sales tax on diesel fuel and the license tax on gasoline, it was imposing a tax on LAAW, not the United States. The United States and Wyoming are, however, apparently in accord with the following language from *South Carolina v. Baker*, 485 U.S. 505, 523, 108 S.Ct. 1355, 1366, 99 L.Ed.2d 592 (1988), *reh'g denied*, 486 U.S. 1062, 108 S.Ct. 2837, 100 L.Ed.2d 937 (1988), which serves as a good starting point:

> In sum, then, under current intergovernmental tax immunity doctrine the States can never tax the United States directly but can tax any private parties with whom it does business, even though the financial burden falls on the United States, as long as the tax does not discriminate against the United States or those with whom it deals.

We shall consider the sales tax on diesel fuel and the license tax on gasoline *seriatim*.

### I. Diesel Fuel

■ Wyo.Stat. § 39–6–404(a) (1977) provides in pertinent part as follows:

> Except as provided by W.S. § 39–6–405, there is levied and *shall be paid by the purchaser* on all sales of twenty-five cents ($.25) or more an excise tax of three percent (3%) upon:
>
> (1) the sales price of every retail sale of tangible personal property within the state (emphasis added).

Wyo.Stat. § 39–6–402(a)(iii) (1977) defines a sale as that term is used in the statute above set forth as follows:

> "Sale" means *any transfer of title or possession for a consideration* including the fabrication of tangible personal property when the materials are furnished by the purchaser ... (emphasis added).[2]

---

**2.** Wyo.Stat. § 39–6–405(a)(xv) (1977 and Supp. 1991), in effect, exempts sales to the United

States from the sales tax. This exemption rec-

The United States argues that § 39–6–404(a) provides that the Wyoming sales tax "shall be paid by the purchaser," and that under the undisputed facts the United States is the purchaser of the diesel fuel.[3] In this regard, the district court in its order granting Wyoming summary judgment did refer, several times, to the United States as being the purchaser of the diesel fuel. Notwithstanding, the district court, relying on the definition of "sale" in § 39–6–402(a)(iii), held that LAAW was in "possession [of the diesel fuel] for a consideration" and under § 39–6–402(a)(iii) and § 39–6–404(a)(1), was subject to a sales tax on the diesel fuel. The district court based this holding on the fact that LAAW accepted delivery of the diesel fuel and paid for it with their own business checks signed by an LAAW employee. However, as mentioned in the district court's summarization of the facts, the checks were drawn against funds deposited in a special checking account by the United States Department of Energy (DOE).

Under the described circumstances, it is doubtful that LAAW ever had legal "possession" of the diesel fuel, but, in any event, if the United States was the "purchaser" of the diesel fuel, Wyoming cannot impose and collect a sales tax from LAAW—a nonpurchaser. So, in our view, the validity of Wyoming's imposition of a sales tax on LAAW depends, in the first instance, on whether LAAW or the United States was the purchaser of the diesel fuel.

As indicated, NPR–3 is currently administered by the DOE, and it is undisputed that refined petroleum products, including diesel fuel, as well as gasoline, were purchased by the Defense Fuel Supply Center (DFSC), a sub-agency of the Defense Logistics Agency, which is itself a component part of the Department of Defense. In this regard each year, at DOE's direction, LAAW provides DOE with an estimate of the requirements for refined petroleum products at NPR–3 for the coming year. DOE then gives this information to DFSC, which thereafter purchases from various sources petroleum products for DOE in accordance with Federal Acquisition Regulations. After receiving bids, DFSC awards contracts to the successful bidders. Such contracts include specifications as to type, quality, price, and delivery location. The contracts also provide that the DFSC is liable for the nonpayment of the petroleum products. At no time did LAAW or its employees participate in the DFSC procurement process. These contracts further provide, as does the contract between LAAW and DOE, that title to the refined petroleum products purchased by DFSC passes directly from the vendor to DOE.

Further, it is not in dispute that when DOE's fuel storage and holding facilities at NPR–3 have available storage capacity, LAAW schedules deliveries of petroleum products by requesting that the contract supplier deliver a specific refined product in accordance with the DFSC contract. The products are then delivered to NPR–3 in the supplier's trucks and pumped from the truck by the driver into government-owned storage tanks, or into equipment, drilling rig tanks or temporary tanks at well sites. When delivery is made, an LAAW employee signs a receipt or delivery ticket and accepts a copy from the driver.

As concerns payment for the purchase of the diesel fuel here involved, as noted above, LAAW issues the supplier a check bearing its own name, signed by an LAAW employee, but drawn on federally owned funds deposited in a checking account opened and maintained pursuant to a DOE letter of credit. DOE maintains the account at the drawee bank which is funded by a letter of credit in favor of DOE and issued by the United States.

Under the described circumstances, it is quite clear to us that the United States, and not LAAW, is the purchaser of the diesel fuel here involved, and under § 39–6–404(a) the sales tax shall be paid by the

---

ognizes the teaching of *McCulloch v. Maryland,* 17 U.S. (4 Wheaton) 316, 4 L.Ed. 579 (1819).

**3.** It is agreed that purchases of diesel fuel are subject to a sales tax under Wyo.Stat. § 39–6–404 (1977).

purchaser.[4] "Purchasers who, within Wyoming, take title to or the possession of tangible personal property, for their use and not for subsequent resale, owe sales tax on that transaction." *Sublette County School District No. 1 v. State Board of Equalization*, 770 P.2d 218, 220 (Wyo. 1989). As above mentioned, the district court itself referred to the United States as the purchaser of the diesel fuel.

The district court's reliance on Wyo.Stat. 39–6–402(a)(iii) (1977) is misplaced. Under Wyoming law, it would appear that LAAW never had legal "possession" of the diesel fuel. *Craig v. Gudim*, 488 P.2d 316, 319 (Wyo.1971). Accepting delivery does not constitute possession. But, in any event, the sales tax falls on the "purchaser," whether he be purchasing "title" or "possession." Under Wyoming statutes, Wyoming cannot impose and collect from LAAW a sales tax on the diesel fuel purchased by the United States. The district court erred in holding that LAAW was liable for the sales tax on diesel fuel thus acquired by the United States.

Wyoming's reliance on *United States v. New Mexico*, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982) is misplaced. There the contractors under contract with the United States placed orders with third party suppliers in their own names and identified themselves as being the purchasers. In holding that the contractors were not protected by the Supremacy Clause of the Constitution and were subject to the New Mexico use tax, the Court stated that:

> tax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned.

*Id.* at 735, 102 S.Ct. at 1383.

In the instant case, the United States placed the orders for diesel fuel, as well as taking title thereto, directly from the ven-

dor. Counsel suggests that this is a distinction without a difference. We disagree and believe that there is a critical difference between the instant case and *United States v. New Mexico, supra.*

## II. Gasoline

■ Wyo.Stat. § 39–6–209(a) (1977 and Supp.1991) provides, in part, as follows:

> (a) There is levied and shall be collected a license tax of eight cents ($.08) per gallon on all gasoline *used,* sold or distributed for sale or *use* in this state ... (emphasis added).

As concerns the effort of Wyoming to impose a license tax on LAAW, it is Wyoming's position that when LAAW withdraws gasoline from the federally owned storage tanks at NPR–3, it becomes liable for the license tax set forth in § 39–6–209(a).

As we understand it, the United States concedes that under *County of Natrona v. Casper Air Service*, 536 P.2d 142, 145 (Wyo.1975), the license tax with which we are here concerned is not a sales or use tax and by its terms applies to stored gasoline when it is "withdrawn from storage." In this latter connection, i.e., "withdrawn from storage," *see Edelman v. Boeing Air Transport*, 289 U.S. 249, 252, 53 S.Ct. 591, 592, 77 L.Ed. 1155 (1933), which holds that for the purpose of a license tax, "use" occurs at the time of withdrawal.

Further, as we understand it, the United States concedes that the State of Wyoming could impose a license tax on the "mere use" by LAAW of the gasoline purchased and owned by the United States, but argues that § 39–6–209(a) does not provide for such. In thus arguing, the United States urges us to modify the word "use" as it appears in § 39–6–209(a) with language appearing in Wyoming's general use tax statute. In the latter statute "use" is said to mean and include "the exercise of any right or power over tangible personal property incident to ownership or by any

---

4. Of course if Wyoming attempted to impose a sales tax on the United States for its purchase of the diesel fuel, such would violate *McCulloch v.*

*Maryland,* 17 U.S. (4 Wheaton) 316, 4 L.Ed. 579 (1819).

transaction where possession is given by lease or contract." Wyo.Stat. § 39–6–502(a)(vii) (1977). Since LAAW does not "own" the gasoline, the United States argues that LAAW is not subject to the tax provided for in § 39–6–209(a). We decline to do this statutory redrafting.

As indicated, Wyo.Stat. 39–6–502(a)(vii) does state that the word "use" means "the exercise of any right or power over tangible personal property incident to ownership or by any transaction where possession is given by lease or contract." However, § 39–6–502(a) limits the definition of "use" appearing in § 39–6–502(a)(vii) to "this article," and that "article" concerns Wyoming's use tax, which is Article 5. As indicated, we are not here concerned with a sales or use tax on gasoline, but a license tax imposed pursuant to Article 2.

Further, we think the United States' reliance on *Texas Co. v. Siefried*, 60 Wyo. 142, 147 P.2d 837 (1944), *reh'g denied*, 150 P.2d 99 (Wyo.1944), is misplaced. *Texas Co.* was concerned with an earlier license tax on gasoline "used" within the State of Wyoming and the Wyoming Supreme Court in that case held that it was the act of withdrawing the gasoline from a storage tank that triggered the license tax. "Ownership" of the withdrawn gasoline was not a particular issue in that case. It is true that in *Texas Co.* the Wyoming Supreme Court did look to the general use tax statute then in existence as an aid to interpretation, but such reference does not indicate to us that the word "use" in § 39–6–209(a) carries with it that the "use" must be "incident to ownership." In *Texas Co.* the Wyoming Supreme Court held that the "word 'use' ..., in its proper definition, [is] broad enough to include such acts as storing and withdrawal from storage,...." *Id.*, 1147 P. at 844. This suggests that "use" need not be "incident to ownership."[5]

In sum, Wyo.Stat. § 39–6–209(a) imposes a license tax on all gasoline used, sold or distributed for sale or used within the State of Wyoming, and neither the statute nor

the case law requires that the "use" be "incident to ownership."

The license tax on LAAW's use of the gasoline purchased and owned by the United States falls within the ambit of such cases as *South Carolina v. Baker*, 485 U.S. 505, 108 S.Ct. 1355, 99 L.Ed.2d 592 (1988), *reh'g denied*, 486 U.S. 1062, 108 S.Ct. 2837, 100 L.Ed.2d 937 (1988); *United States v. New Mexico*, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982); *Alabama v. King & Boozer*, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1941); and *James v. Dravo Contracting Co.*, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937), and does not offend *McCulloch v. Maryland*, 17 U.S. (4 Wheaton) 316, 4 L.Ed. 579 (1819).

Accordingly, the judgment of the district court as it relates to the sales tax on diesel fuel is reversed. The judgment as it relates to the license tax on gasoline is affirmed.

---

5. We note that the use tax involved in *United States v. New Mexico, supra,* which tax was upheld, taxed the "mere use" of the property there in question and did not require that such use be "incident to ownership."